That's **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRIAN LUCAS, ARONZO DAVIS, TORRENCE VAUGHANS, on behalf of themselves and similarly situated job applicants, ) ) ) ) | |
| Plaintiffs, ) ) | No. 13 C 1524 |
| v. ) ) | Judge Sara L. Ellis |
| GOLD STANDARD BAKING, INC., PERSONNEL STAFFING GROUP, LLC d/b/a MOST VALUABLE PERSONNEL d/b/a MVP, ) ) ) ) ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiffs Brian Lucas, Aronzo Davis, and Torrence Vaughans, individually and on behalf of similarly situated job applicants, filed a third amended complaint against Defendants Gold Standard Baking, Inc. ("GSB") and Personnel Staffing Group, LLC, doing business as Most Valuable Personnel ("MVP"), alleging race discrimination in violation of Title VII and 42 U.S.C. § 1981. GSB filed a motion to dismiss, which MVP has joined. The Court previously denied the motion in part and continued it as to (1) the failure to file an EEOC charge on the Title VII disparate impact claims and (2) the failure to adequately allege joint-employer liability. *See* Aug. 22 Minute Entry, Doc. 44; Aug. 22 Transcript of Proceedings, Doc. 45-1. For the following reasons and those previously stated, the motion to dismiss [38] is denied.

# BACKGROUND[1]

GSB operates an industrial baking facility in Chicago, Illinois, and procures its employees by hiring them directly and through staffing agencies, including MVP. The majority of workers at GSB are Latino employees, with almost no African-Americans assigned to work there. MVP recruits low and moderately skilled laborers, with the majority of its advertisement conducted in Spanish-language media. Although MVP regularly performs pre-assignment background check screening on African-American laborers, it does not do the same for Latino laborers. MVP gives preference to placing immigrant laborers at GSB because it believes that they are less likely to complain about being compensated for less than the full amount of time worked.

Beginning in November 2011, Plaintiffs sought employment directly at GSB but were instead instructed to apply through MVP's dispatch office in Cicero. Despite specifically asking the dispatcher at MVP to be assigned to work at GSB, Plaintiffs were not assigned to GSB. In refusing to assign Plaintiffs to GSB, MVP was complying with GSB's request not to assign African-American workers to its facility. Plaintiffs, however, were as qualified to work at GSB as the Latino workers who sought and were given work assignments there.

# LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive

---

[1] The facts in the background section are taken from Plaintiffs' third amended complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Disparate Impact Claims

Defendants argue that Plaintiffs' Title VII disparate impact claims should be dismissed because they failed to include these claims in their EEOC charges. "A Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). An allegation in an EEOC charge is reasonably related to a federal claim if it involves "the same conduct and implicate[s] the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005).

In their third amended complaint, Plaintiffs have alleged theories of both disparate treatment and disparate impact. These theories, however, are "conceptually distinct." *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996). Disparate treatment "requires the plaintiff to prove that the defendants acted with actual discriminatory intent," while disparate impact "exists where a specified employment practice, although neutral on its face, has a disproportionately negative effect on members of a legally protected class." *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996). Defendants do not dispute that Plaintiffs can

properly pursue the disparate treatment claims but contend that the disparate impact claims exceed the scope of the EEOC charges.

Plaintiffs filed nearly identical EEOC charges against both GSB and MVP.[2] These charges asserted race discrimination and included the following narrative:

> 3. I was qualified to perform the job(s) for which I applied at Gold Standard Baking, Inc. However, I was denied employment with Gold Standard Baking, Inc. directly or through its affiliated companies, agents and/or contracted staffing agencies to perform work at Gold Standard Baking, Inc. because of my race, African-American.
>
> 4. On information and belief, Gold Standard Baking, Inc. had a policy and practice of steering qualified African-American applicants and employees of its contracted staffing agencies, including me, away from work at Gold Standard Baking, Inc. while other, less-qualified, non-African-American employees were hired directly by Gold Standard Baking, Inc. or through one of its affiliated companies, agents and/or contracted staffing agencies to perform work at Gold Standard Baking, Inc.
>
> 5. A class of other similarly situated, qualified African-American applicants were similarly denied employment with Gold Standard Baking, Inc., directly or through its affiliated companies, agent and/or contracted staffing agencies to perform work at Gold Standard Baking, Inc. because of their race, African-American, while less qualified non-African-American applicants were contracted directly or through its affiliated companies, agents and/or contracted staffing agencies to perform work at Gold Standard Baking, Inc.
>
> 6. The policies and practices of Gold Standard Baking, Inc. and its agents, affiliated companies, agents and/or contracted staffing agencies had the effect of denying me and a class of other African-American applicants an equal opportunity and resulted in systematic discrimination against African-American applicants and segregation of its workforce.

---

[2] Plaintiffs did not include their EEOC charges as exhibits to the third amended complaint but Defendants submitted the charges as exhibits to the motion to dismiss and their joint reply. Because the Court must consider the allegations in Plaintiffs' EEOC charges to determine the proper scope of their complaint and the charges are referenced in the third amended complaint and are central to Plaintiffs' claims, the EEOC charges are properly before the Court at this time. *See Davis v. Central Can Co.*, No. 05 C 1563, 2006 WL 2255895, at *4 (N.D. Ill. Aug. 4, 2006) (collecting cases).

Group Ex. 1 to GSB's Mem.; Ex. A to Defs.' Joint Reply.

Defendants argue that Plaintiffs' charges do not encompass their disparate impact claims because they suggest intentional discrimination and not discrimination that resulted from a facially-neutral policy. Defendants rely on a line of cases from district courts in the Seventh Circuit that have found that although plaintiffs need not specifically use the term "disparate impact" in their EEOC charges to have properly exhausted a disparate impact claim, "there is a necessity for the EEOC charges to provide that a facially neutral policy or policies resulted in unintended but adverse consequences to the protected class." *Remien v. EMC Corp.*, No. 04 C 3727, 2008 WL 821887, at *5 (N.D. Ill. Mar. 26, 2008); *see also Padron v. Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1049–50 (N.D. Ill. 2011) (EEOC charges alleged disparate treatment, not disparate impact, where they alleged that plaintiffs were treated differently because they were Cuban and failed to identify a facially-neutral policy or practice).

The Seventh Circuit rejected this argument in its recently issued opinion in *Adams v. City of Indianapolis*, however. --- F.3d ----, 2014 WL 406772, at *7–9 (7th Cir. Feb. 4, 2014). In *Adams*, the district court dismissed the plaintiffs' disparate impact claims, finding that their EEOC charges had failed to raise disparate impact claims and that the "allegations of intentional discrimination [in the EEOC charges] defeated any claim that the promotion process was facially neutral but had caused a disparate impact." *Id.* at *8. The Seventh Circuit, although agreeing that the disparate impact claims should have been dismissed, disagreed on the reasoning, concluding that the EEOC charges adequately exhausted those claims. *Id.* at *9. Although the district court, as Defendants urge here, required the plaintiffs to have alleged a facially neutral policy, the Seventh Circuit held that "[d]isparate-impact claims may be based on any employment policy, not just a facially neutral policy." *Id.* at *8; *see also Vitug*, 88 F.3d at 513 ("The disparate

5

impact theory of Title VII liability may be utilized to challenge both objective and, as here, subjective selection processes."). Thus, the allegations of intentional discrimination did not preclude a disparate impact claim. *See Adams*, 2014 WL 406772, at *8.

Here, Plaintiffs included allegations in their EEOC charges of Defendants' policies and practices that had a disproportionately negative effect on African-American job applicants. Although Plaintiffs' EEOC charges also allege intentional discrimination, under *Adams*, this does not foreclose them from pursuing their disparate impact claims. *See id.* Because Plaintiffs' EEOC charges could be read to encompass both disparate treatment and disparate impact, Defendants' motion to dismiss Plaintiffs' disparate impact claims based on failure to exhaust is denied.

## II.     GSB's Vicarious Liability as a Joint Employer or MVP's Agent

GSB argues that it should be dismissed from the case because Plaintiffs have failed to adequately allege that GSB can be held liable for MVP's alleged discrimination based on joint employer or agency theories of liability. Courts in this circuit have applied a joint employer theory to "cases in which an individual is employed by a temporary employment agency, but suffers discrimination by the employer to which he or she is assigned, where the employer exerts a significant amount of control over the individual." *Piano v. Ameritech/SBC*, No. 02 C 3237, 2003 WL 260337, at *5 (N.D. Ill. Feb. 5, 2003). Although the parties have not identified and the Court in its own research has not uncovered a case in this circuit applying the joint employer theory to a failure to hire claim, the Court does not see any reason—nor has GSB proffered one—not to apply the theory to such a claim. *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1324 (10th Cir. 2004) (considering whether defendant was a joint employer for purposes of failure to hire claim).

6

To determine whether GSB is a joint employer, the Court is guided by the following factors:

> (1) the extent of the employers' control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Piano*, 2003 WL 260337, at *5 (quoting *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)). Similar principles apply under an agency theory, looking to whether the alleged principal, in this case GSB, has the ability to control the agent's, MVP's, actions. *See Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998); *Daniel v. Sargent & Lundy, LLC*, No. 09 C 7206, 2012 WL 874419, at *5 (N.D. Ill. Mar. 14, 2012) (in determining whether a party is a joint employer, "the courts apply a common law test based on agency principles"). As Defendants admit, these are fact-intensive inquiries that typically require further development through discovery. *See Piano*, 2003 WL 260337, at *5 (considering joint employer theory at summary judgment stage); *Wright v. Barth Elec. Co.*, No. 1:09-cv-1202-TWP-MJD, 2011 WL 883645, at *10–11 (S.D. Ind. Mar. 11, 2011) (same).

Plaintiffs have alleged that MVP acts as an "agent of Gold Standard Baking in recruiting, training, assigning and paying laborers to work at Gold Standard Baking" and as "a joint employer with Gold Standard Baking in the assignment of laborers to work at Gold Standard Baking." Third Am. Compl. ¶¶ 21–22. Plaintiffs further allege that MVP did not assign them to work at GSB because MVP "was complying with a discriminatory request from Gold Standard Baking to steer African-American laborers away from Gold Standard Baking." *Id.* ¶ 40. These allegations suggest that GSB exercised control over MVP's hiring and assignment process.

7

Discovery may prove otherwise, but the Court finds Plaintiffs' allegations sufficient to meet Rule 8's pleading requirements. *Cf. Shah v. Littelfuse Inc.*, No. 12 CV 6845, 2013 WL 1828926, at *3–5 (N.D. Ill. Apr. 29, 2013) (dismissing temporary employment agency where allegations suggested that it was only an intermediary between plaintiff and employer and did not exercise control over plaintiff's day-to-day work). Thus, Plaintiffs may proceed against both MVP and GSB.[3]

## CONCLUSION

For the foregoing reasons, Defendants' motion [38] is denied. Defendants have until February 25, 2014 to answer the third amended complaint.

Dated: February 10, 2014

SARA L. ELLIS
United States District Judge

---

[3] GSB also argues that Plaintiffs cannot pursue a joint employer theory because they have not adequately alleged knowledge of the discriminatory conduct or that GSB failed to take prompt corrective measures within its control. *See Shah*, 2013 WL 1828926, at *6 (to hold a defendant liable for discrimination under a joint employer theory, plaintiff must establish "(1) a joint employer relationship, (2) that the joint employer knew or should have known of the discriminatory conduct, *and* (3) that the joint employer failed to take prompt corrective measures within its control"). The Court previously rejected GSB's argument that the third amended complaint does not adequately allege knowledge. *See* Aug. 22 Transcript of Proceedings 9:3–8, 14:5–15:21. GSB only argues that the third prong is not met because Plaintiffs do not and cannot allege that GSB had control over MVP. *See* GSB Mem. at 12. Because the Court has found that Plaintiffs have adequately alleged control for purposes of surviving a motion to dismiss, this prong is also satisfied.