**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES ZOLLICOFFER, ANTWOIN HUNT, and NORMAN GREEN, on behalf of themselves and similarly situated laborers, | |
| Plaintiffs, | Case No. 13 C 1524 |
| v. | Judge Ellis |
| Gold Standard Baking, INC., PERSONNEL STAFFING GROUP, LLC d/b/a MOST VALUABLE PERSONNEL d/b/a MVP, | Magistrate Judge Kim |
| Defendants. | |

**SIXTH AMENDED CLASS ACTION COMPLAINT**

Plaintiffs James Zollicoffer, Antwoin Hunt, and Norman Green ("Plaintiffs")[1], on behalf of themselves and all other similarly situated laborers, for their Complaint against Gold Standard Baking, Inc. ("Gold Standard Baking") and Personnel Staffing Group, LLC d/b/a Most Valuable Personnel d/b/a MVP ("MVP")(collectively "Defendants"), state as follows:

## I. INTRODUCTION

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and under the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section §1981"), for Defendants' discrimination against African-American laborers in their practices of assigning work. Gold Standard Baking operates an industrial baking facility in Chicago, Illinois. Gold Standard Baking staffs its operation both through direct hires and through staffing agencies on the west side of Chicago, including MVP.

2. Beginning in or before 2009 and continuing thereafter, Plaintiff Zollicoffer, beginning in or about 2010, Plaintiff Hunt, and beginning in July of 2014 and continuing on thereafter, Plaintiff Green, all African Americans, sought work assignments to MVP's client

---

[1] Brian Hunt, Aronzo Davis and Torrence Vaughans each elected not to proceed as named Plaintiffs in this matter but remain absent members of a putative class in this matter.

companies, including Gold Standard Baking, through MVP's Cicero branch office and were qualified to work at Gold Standard Baking, but were repeatedly denied the opportunity to be assigned to work at Gold Standard Baking.

3.　　Plaintiff Zollicoffer was never assigned by MVP to work at any of its clients. Plaintiff Hunt has been assigned to work by MVP at some client companies through its Cicero branch office on intermittent occasions since early 2010, but was not assigned to work at other client companies and has been available for other work assignments.

4.　　From 2010 to July 2014, Plaintiff Hunt was never assigned to work at Gold Standard Baking. Beginning in or about August 2014, after the filing of this original lawsuit, Plaintiff Hunt was assigned to work at Gold Standard Baking.

5.　　Beginning in or about July 2014, Plaintiff Green has been assigned to work by MVP at two of its client companies through its Cicero branch office on intermittent occasions, but on days he was not assigned to work, he was available to work at other client companies of MVP, including Gold Standard Baking. Plaintiff Green was not offered a work assignment at Gold Standard Baking.

6.　　In addition to being denied the opportunity to be assigned to Gold Standard Baking themselves as described in paragraphs 2 – 5, Plaintiffs Zollicoffer, Hunt, and Green witnessed other qualified African-American individuals being denied the opportunity to be assigned to work at MVP's client companies, including Gold Standard Baking, through MVP's Cicero branch office while other, similarly situated non-African American laborers who appeared at MVP's Cicero branch office after Plaintiffs were assigned to work at Gold Standard Baking.

7.　　Plaintiffs will seek to certify a class pursuant to Fed. R. Civ. P. Rule 23(a) and (b) to pursue Title VII and § 1981 claims on behalf of themselves and similarly situated African-American laborers.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiffs' Title VII and Section 1981 claims pursuant to 28 U.S.C. § 1331, arising under 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1981, respectively.

9. Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district and as Defendants maintained their offices and transacted business within this jurisdiction.

10. On August 14, 2012, the original Named Plaintiffs Brian Lucas and Aronzo Davis filed charges of discrimination against Gold Standard Baking and MVP with the EEOC. On November 29, 2012, the EEOC issued Notices of Right to Sue to former Named Plaintiffs Lucas and Davis.[2] Current Named Plaintiffs Zollicoffer, Hunt and Norman Green have not filed charges with the EEOC, but their Title VII claims, described herein, fall within the scope of the charges filed by original Named Plaintiffs Lucas, Davis and Vaughans. Accordingly, Plaintiffs Zollicoffer, Hunt and Green are not required to exhaust his remedies before joining the instant action as a named Plaintiff. *Allen v. City of Chicago*, 828 F. Supp. 543, 556 (ND IL 1993) (citing *Anderson v. Montgomery Ward & Co.,* 852 F.2d 1008, 1017-18 (7th Cir. 1988).

11. This case was timely filed.

## III. PARTIES

### A. Plaintiffs

12. Plaintiff James Zollicoffer:

    a. is African American and resides in this judicial district;

    b. is and, at all relevant times, has been qualified to perform work for MVP;

    c. is and, at all relevant times, has been qualified to perform work for MVP's client company, Gold Standard Baking;

---

[2] Former Named Plaintiffs Lucas and Davis' Right to Sue Notices from the EEOC are attached hereto as Group Exhibit F.

    d.      is and, at all relevant times, has been available for referral for employment to Gold Standard Baking through MVP; and

    e.      is and, at all relevant times, has been a laborer seeking work assignments from MVP in the types of jobs that were available at Gold Standard Baking.

13.      Plaintiff Antwoin Hunt:

    a.      is African American and resides in this judicial district;

    b.      is and, at all relevant times, has been qualified to perform work for MVP;

    c.      is and, at all relevant times, has been qualified to perform work for MVP's client company, Gold Standard Baking;

    d.      is and, at all relevant times, has been available for referral for employment to Gold Standard Baking through MVP; and

    e.      is and, at all relevant times, has been a laborer seeking work assignments from MVP in the types of jobs that were available at Gold Standard Baking.

14.      Plaintiff Norman Green:

    a.      is African American and resides in this judicial district;

    b.      is and, at all relevant times, has been qualified to perform work for MVP;

    c.      is and, at all relevant times, has been qualified to perform work for MVP's client company, Gold Standard Baking;

    d.      is and, at all relevant times, has been available for referral for employment to Gold Standard Baking through MVP; and

e.     is and, at all relevant times, has been a laborer seeking work assignments from MVP in the types of jobs that were available at Gold Standard Baking.

**B.     Defendants**

15.     At all relevant times, Defendant Gold Standard Baking, Inc.:

a.     has been a corporation organized under the laws of the State of Illinois;

b.     has conducted business in Illinois and within this judicial district; and

c.     has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c);

16.     At all relevant times, Defendant MVP:

a.     has been a corporation organized under the laws of the State of Florida;

b.     has conducted business in Illinois and within this judicial district;

c.     has been an "employment agency" as that term is defined by 42 U.S.C. § 2000e(c); and

d.     has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c).

## IV.     FACTUAL BACKGROUND

18.     The temporary staffing industry is one of the fastest-growing sectors of the modern job market. Upon information, there are more than 300 temporary staffing agencies in Illinois with over 900 branch offices throughout the state. Like for-profit firms in most industries, temporary staffing agencies stay in business by being responsive to the preferences of their customers, also known as "client companies." Accordingly, temporary staffing agencies purport to act on the requested preferences of their client companies when making referrals of laborers.

20.     MVP is or has been in the business of providing third-party client companies, including Gold Standard Baking, with low- and moderately-skilled laborers to fill jobs on a daily basis through the MVP Cicero Branch Office.

21.     MVP acts as an agent of Defendant Gold Standard Baking in recruiting, training, assigning and paying laborers to work at Defendant Gold Standard Baking.

22.     MVP acts as a joint employer with Defendant Gold Standard Baking in the assignment of laborers to work at Defendant Gold Standard Baking.

23.     As part of its business, MVP is constantly engaged in recruiting low- and moderately-skilled laborers to fill ongoing work orders.  When a laborer seeks an assignment through MVP, such laborers are making themselves available for referral to fill daily jobs at any of the third-party client companies to which MVP supplies labor, including Gold Standard Baking.

24.     On information from former MVP Dispatchers, Drivers and Onsite Representatives, many of MVP's client companies, including Defendant Gold Standard Baking, directed MVP not to send African American laborers to work at their company.

25.     In communicating their desire to not have African-American laborers referred for assignment, it was common for Defendant Gold Standard Baking to use code words such as "guapos" (translated as "pretty boys" – ones who don't want to do dirty work) to refer to African Americans and "feos" (translated as "dirty ones"), "bilingues" (translated as "bilinguals") or "los que escuchan a La Ley" (translated as "people who listen to Spanish radio station La Ley") to refer to Hispanic laborers.

26.     On information from former MVP Dispatchers, Drivers and Onsite Representatives, MVP complied with the discriminatory requests for laborers from its client companies, including Defendant Gold Standard Baking.

27.     On information from former MVP Dispatchers, MVP instructed its Dispatchers and Onsite Representatives to refrain from referring African-American laborers to assignments at many of its client companies, including Gold Standard Baking.

28.     This instruction from MVP to its Dispatchers and Onsite Representatives at each of its client companies was often explicit.   For example, a former MVP Onsite Representative reports being disciplined by MVP management for referring African-American laborers to MVP's client companies known to not accept African-American laborers.  *See* Rosa Ceja Decl. ¶ 17, attached as Ex. A.

29.     Another former MVP Onsite Representative reports being called to a meeting with other MVP employees and MVP senior management where she and others complained of a client company's refusal to accept African-American laborers.   Despite difficulty fulfilling the client's request for a large number of daily laborers, MVP continued to comply with the directives not to send African-American laborers. *See* Pamela Sanchez Decl. ¶ 16, attached as Ex. B.

30.     Upon information, it also is common for this discriminatory instruction to MVP Dispatchers and Onsite Representatives to manifest through thinly-veiled stereotypes about the types of people who were suitable for assignment to MVP's client companies.   Lisette Robles, the former Branch Manager of MVP's Cicero office, testified that MVP screened out candidates who "look[ed] gang related or things like that."   Ms. Robles directed MVP Dispatchers not to hire and assign out individuals whom the dispatchers assumed to be "gang related" based on their clothing and appearance—the presence of tattoos or "pants hanging"—their demeanor, where they lived or "just by common street knowledge."  *See* Excerpts from the deposition of Lisette Robles (Feb. 13, 2015) at 75-18- 85:13, attached as Exhibit C.

31.     Even when MVP Dispatchers or Onsite Representatives attempted to refer African-American laborers to its client companies, including Gold Standard Baking, that did not accept such workers, MVP and its client companies, including Gold Standard Baking, maintained a system to ensure the African-American laborers could be easily terminated.  For example, several former Dispatchers and Onsite Representatives have testified that African-American laborers were marked "Do Not Return" or "DNR'd" within hours of their assignments or at the end of their first shift.  Sanchez Decl. at ¶ 3, Ex. B; Declaration of Maria Carretero at ¶ 9-11, attached as Exhibit D.

32.     On the rare occasion that African-American laborers were referred to Gold Standard Baking, they were often given only one-off assignments and placed in the worst jobs with the most unpleasant working conditions.  Declaration of Daisy Corral at ¶¶  8-12, attached as Ex. E.

33.     MVP publicizes the types of jobs to which it refers laborers through newspaper advertising and word-of-mouth advertising from MVP recruiters, including MVP dispatchers and drivers.  The majority of the MVP Cicero branch office's recruitment efforts are in predominantly Latino neighborhoods, and the paid advertisements are placed only in Spanish-language publications in the Chicago area.

34.     In addition to active recruiting efforts, MVP permits individuals who walk into its Cicero Branch Office to seek work assignments.

35.     When an individual comes to the Cicero Branch Office seeking work, an MVP employee typically takes contact information for the individual and either refers the individual for employment or informs the individual that s/he will be contacted when a daily job becomes open to which s/he can be referred.

36.     On multiple occasions, when the Named Plaintiffs sought work assignments at the MVP Cicero Office, they were directed to put their names on sign-in sheets that indicated the order in which they had arrived.

37.     When Plaintiffs came to the MVP Cicero Office to seek a work assignment, they often waited in the Branch office in an attempt to receive a work assignment.

38.     Other times, MVP Dispatchers at the Cicero Office told Plaintiffs they would be called when work became available and, therefore, Plaintiffs left their contact information in order that they could be called for work assignments.

39.     The MVP Cicero Branch Office has had a practice of retaining contact information and/or applications completed by candidates for referral for at least several months.

40.     When a temporary laborer seeks work from a staffing agency, they generally seek work at any client company, not a specific one.

41.     The jobs for which the MVP Cicero Branch Office refers candidates do not require any special skills, training or qualifications.

42.     From February 27, 2009 through the present, MVP has referred for employment thousands of laborers to its client companies, including Gold Standard Baking.

43.     During the period from February 27, 2009 to the present, Plaintiffs have observed that typically between a quarter and a third of the laborers at the MVP Cicero Branch Office seeking work assignments were African American.

44.     During the period from February 27, 2009 to the present, Plaintiffs have observed at the MVP Cicero Branch Office that many laborers who appeared Hispanic and spoke Spanish were assigned to work, while laborers who appeared to be African American were not assigned work.

45.     During the period from February 27, 2009 to the present, MVP has assigned Plaintiff Zollicoffer to work at companies other than Defendant Gold Standard Baking through MVP's branch office in Prospect Heights, Illinois.

46.     During the period from February 27, 2009 to the present, Plaintiff Zollicoffer also sought work through MVP's Cicero Branch Office.

47.     Plaintiff Zollicoffer sought work assignments through MVP's Cicero Branch Office in person and by calling the branch office when MVP was referring laborers to work assignments at Defendant Gold Standard Baking.

48.     However, during the period from February 27, 2009 to the present, Plaintiff Zollicoffer has never been assigned to work through MVP's Cicero Branch Office to any employer, including Gold Standard Baking, even though he was considered qualified to work and was assigned to work by another MVP office.

49.     During the period 2009 to the present, Plaintiff Zollicoffer has never been offered any work assignments from MVP to any of Defendant Gold Standard Baking.

50.     During the period from 2010 to the present, Plaintiff Hunt has sought work through MVP's Cicero Branch Office repeatedly, in person and by calling the branch office.

51.     However, between the period of 2010 to July 2014, Plaintiff Hunt has been assigned to work through MVP's Cicero Branch Office on only a few occasions when he was present at the branch office or called, but has never been assigned to any of Defendant Gold Standard Baking.  In August 2014, after the filing of this lawsuit, Plaintiff was assigned to work for a brief period at Gold Standard Baking.

52.     During the period from 2010 to July 2014, Plaintiff Hunt was available for work assignments from MVP on days he was not present in MVP's Cicero Branch Office and on which MVP was making work assignments to Defendant Gold Standard Baking, but was not

offered a work assignments from the MVP Cicero Branch Office to Defendant Gold Standard Baking.

53.     During the period of July 2014 to the present, Plaintiff Green has sought work through MVP's Cicero Branch Office repeatedly, in person and by calling the branch office.

54.     However, during the period from July 2014 to the present, Plaintiff Green has been assigned to work through MVP's Cicero Branch Office on only a few occasions when he was present at the branch office or called, but has never been assigned to any of Defendant Gold Standard Baking.

55.     During the period from July 2014 to the present, Plaintiff Green has also been available for work assignments from MVP on days he was not present in MVP's Cicero Branch Office and on which MVP was making work assignments to Defendant Gold Standard Baking, but has been offered no work assignments from this office to any of Defendant Gold Standard Baking.

56.     While in the MVP Cicero Branch Office, Plaintiffs have seen MVP vans and/or busses transport individuals who appeared to be Latino, many of whom spoke Spanish, but none who appeared to be African American.

57.     Upon information from former dispatchers, MVP only or almost exclusively provides rides to the MVP Cicero Branch Office for laborers in predominantly Latino neighborhoods.

58.     Plaintiffs are unaware of any vans and/or busses available to transport laborers to MVP's Cicero office from predominantly African-American communities on the west side of Chicago, where Plaintiffs Hunt, Zollicoffer and Green reside or have resided.

59.     Plaintiffs are and, at all relevant times, have been qualified to work at the MVP Cicero Branch Office's client companies, including Gold Standard Baking.

60.     Other African-American laborers who sought work assignments from MVP's Cicero branch office were likewise qualified to work at the MVP Cicero Branch Office's client companies, including Gold Standard Baking.

61.     MVP failed to assign Plaintiffs to work at Gold Standard Baking, because of their race.

62.     MVP refused to assign other similarly situated African-American laborers to work at Gold Standard Baking because of their race.

63.     MVP assigned other, non-African-American laborers to work at Gold Standard Baking, to fill jobs that required no special training, education, knowledge or experience.

64.     MVP assigned other, non-African-American laborers to work at Gold Standard Baking, even though they sought work assignments after Plaintiffs and other similarly situated African American laborers, who were not given assignments.

65.     Gold Standard Baking had the authority, and exercised that authority, to select the characteristics of laborers that MVP assigned and did not assign to work at its facility.   MVP implemented the instructions provided by Defendant Gold Standard Baking about which laborers to assign to work at the Client Companies.

66.     Gold Standard Baking and MVP exercised authority jointly over the choice of which laborers to assign to work at Gold Standard Baking, when and how to discipline workers who were assigned to work at Gold Standard Baking and the time, place, and scope of the work to be performed.

67.     On information from former MVP dispatchers, MVP failed to assign Plaintiffs and other similarly situated African-American laborers to work at Gold Standard Baking because it was complying with a discriminatory request from Defendant Gold Standard Baking to steer African-American laborers away from its company.

## V.    CLASS ACTION ALLEGATIONS

68.    Plaintiffs will seek to certify a class pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(3) to pursue their race based discrimination claims arising under Section 1981 (Counts I through II) and Title VII (Counts III through VI).

69.    Plaintiffs seek to represent a Class defined as "All African American laborers who sought work assignments through MVP and were otherwise eligible to work at Gold Standard Baking but, on one or more occasion, were not assigned to work at Gold Standard Baking when a position for which they were otherwise qualified was available during the period of four years prior to the filing of the Plaintiffs' Original Complaint for the § 1981 claims and three hundred days prior to the filing of Plaintiffs' EEOC charges for the Title VII claims up through and including the date of judgment."

70.    A class may be certified pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(3) because:

  a. The class is so numerous that joinder of all members is impracticable. While the precise number of Class Members has not been determined at this time, Defendants jointly employed over 5,000 individuals in Illinois during the Title VII and Section 1981 Class Periods, and Plaintiffs estimate that there are thousands of putative class members who were subjected to Defendants' pattern or practice of discrimination since 2009;

  b. There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members. These common questions of law and fact include, without limitation:

   (i) Whether Defendant Gold Standard Baking has a policy or a pattern or practice in place in its hiring practices that results in discrimination against African American laborers;

(ii)     Whether Defendant Gold Standard Baking failed to exercise reasonable care to prevent its agent, MVP, from engaging in discriminatory assignment practices as "employment agencies", "agent" of Gold Standard Baking or "joint employers" with Gold Standard Baking;

(iii)     Whether MVP has a policy or a pattern or practice in place in its assignment practices that results in discrimination against African American laborers or is based on intentional discrimination against African American laborers;

(iv)     Whether MVP complied with discriminatory requests from Gold Standard Baking in its assignments;

(v)     Whether conduct complained of herein constitutes a violation of Title VII;

(vi)     Whether conduct complained of herein constitutes a violation of Section 1981;

(vii)     Whether Defendant MVP failed to exercise reasonable care to prevent its agents from engaging in discriminatory assignment practices requested by Gold Standard Baking;

(viii)     Whether Defendant Gold Standard Baking has had and/or continues to have to have a systemic custom or policy of race-based discrimination targeting African American job applicants;

(ix)     Whether Defendant Gold Standard Baking failed to exercise reasonable care to prevent its agent, MVP, from engaging in discriminatory hiring practices;

(x)     Whether Plaintiffs and members of the Class have or continue to sustain damages, and, if so, the proper measure of damages;

(xi)     Whether Plaintiffs and other members of the Class are entitled to, among other things, injunctive and other equitable relief, and if so, the nature and extent of such injunctive and other equitable relief;

c.     Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' Counsel are competent and experienced in litigating discrimination and other employment class actions;

d.     The class representatives and the members of the class have been equally affected by Defendant Gold Standard Baking's race-based discrimination

in its hiring practices and by Defendants MVP's race-based discrimination in its assignment practices;

e.    The class representatives, class members, and Defendants have a commonality of interest in the subject matter and remedies sought and the class representative is able to fairly and adequately represent the interests of the class. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions creating a hardship on the class members, Defendants, and the Court.

f.    The common legal and factual issues identified above predominate over other issues in this action that affect only individual members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy. By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether the Defendants engaged in a pattern or practice of discrimination in violation of Title VII and Section 1981, and what aggregate damages Defendants owe to the Class, *inter alia*.

g.    Upon information and belief, there are no other pending lawsuits in which members of the Class have raised similar allegations.

h.    This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendants are located in this District.

i.    There are no difficulties in managing this case as a class action.

71.    Therefore, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

## COUNT I
### Violation of Section 1981 – Race-based Discrimination
### Plaintiffs on behalf of themselves and a class of similarly situated African American

**laborers as against Defendant Gold Standard Baking**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 71 as though set forth herein.

72.     This Count arises under Section 1981 for Defendant Gold Standard Baking's discriminatory practices in hiring through its agent or employment agency, MVP, described more fully in paragraphs 12 - 76, *supra*, resulting in disparate treatment of Plaintiffs and a class of African-American job applicants.

73.     As described more fully above and specifically in paragraphs 18 - 67, *supra*, Defendant Gold Standard Baking intentionally discriminated against all Plaintiffs based on their race, African American, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981.

74.     Defendant Gold Standard Baking made discriminatory requests of its agent for assigning laborers, MVP, in that, on information and belief, Defendant Gold Standard Baking requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Gold Standard Baking based on their race, African American.

75.     In the alternative, Defendant Gold Standard Baking knew or should have known that its agent, MVP, was engaged in a discriminatory practice of assigning laborers to work at Gold Standard Baking.

76.     Gold Standard Baking failed to exercise reasonable care to ensure that its agent for assigning laborers to work at Gold Standard Baking, MVP, did not engage in discriminatory assignment practices.

77.     Defendant Gold Standard Baking's discrimination against African-American job applicants in hiring was based on Plaintiffs' and similarly situated job applicants' race, African American, and in violation of 42 U.S.C. § 1981.

78.     As a direct and proximate result of the acts or omissions of Defendant Gold Standard Baking alleged in paragraphs 18 - 67, *supra*, Plaintiffs and similarly situated African

American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

79.     Defendant Gold Standard Baking's conduct was willful and/or reckless, warranting the imposition of punitive damages.

**COUNT II**
**Violation of Section 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American**
**laborers as against Defendants MVP and Gold Standard Baking**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 79 as though set forth herein.

80.     This Count arises under Section 1981 for Defendant MVP's discriminatory practices in assigning laborers to Gold Standard Baking described more fully in paragraphs 18 - 67, *supra*, resulting in disparate treatment of Plaintiffs and a class of African American laborers.

81.     Defendant MVP engaged in discriminatory assignment practices against Plaintiffs and other similarly situated African American laborers on the basis of their race, African American, as described more fully in paragraphs 18 - 67, *supra*, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

82.     As described more fully in paragraphs 18 - 67, *supra*, Defendant MVP engaged in a pattern and practice of racial discrimination against Plaintiffs and other similarly situated African American laborers based on their race, African American.

83.     As described more fully in paragraphs 18 - 67, *supra*, Defendant MVP's discrimination against Plaintiffs and other similarly situated laborers based on their race, African American, was intentional.

84. Defendant MVP failed or refused to assign African American applicants to work at Gold Standard Baking in favor of Latino employees on the basis of their race, African American, as described more fully in paragraphs 18 - 67, *supra*.

85. On information and belief, Defendant MVP's failure to assign Plaintiffs and other similarly situated African-American laborers to work at Gold Standard Baking was, in part, because it was complying with a discriminatory request from Gold Standard Baking, MVP's client, to steer African American laborers away from Gold Standard Baking in favor of Latino laborers.

86. On information and belief, Gold Standard Baking's request to MVP to steer African American laborers away from Gold Standard Baking was based on their race, African American.

87. Defendant MVP failed to exercise reasonable care to ensure that its agents for hiring or assigning laborers did not engage in discriminatory hiring practices.

88. Defendant Gold Standard Baking failed to exercise reasonable care to ensure that its agent for hiring of laborers, MVP, did not engage in discriminatory hiring practices.

89. Defendant MVP's conduct in not assigning Plaintiffs and other similarly situated African American laborers to work at Gold Standard Baking was willful and/or reckless, warranting the imposition of punitive damages.

90. As a direct and proximate result of the willful and reckless acts or omissions of Defendants MVP and Gold Standard Baking alleged in paragraphs 18 - 67, *supra*, all Plaintiffs and similarly situated African American laborers have suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

**COUNT III**
**Violation of Title VII-Race-based Discrimination–Disparate Treatment**
**Plaintiffs on behalf of themselves and a class of similarly situated African American**

**laborers as against Defendant Gold Standard Baking**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 90 as though set forth herein.

91.    This Count arises under Title VII for Defendant Gold Standard Baking's discriminatory practices in hiring through its agent or employment agency, MVP, described more fully in paragraphs 18 - 67, *supra*, resulting in disparate treatment of Plaintiffs and a class of African-American laborers.

92.    As described more fully in paragraphs 18 - 67, *supra*, Defendant Gold Standard Baking engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

93.    As described more fully in paragraphs 18 - 67, *supra*, Defendant Gold Standard Baking engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

94.    As a direct and proximate result of the above-alleged acts or omissions of Defendant Gold Standard Baking, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

95.    Defendant Gold Standard Baking's conduct was willful and/or reckless, warranting the imposition of punitive damages.

96.    Gold Standard Baking failed to exercise reasonable care to ensure that its agent for the assignment of laborers, MVP, did not engage in discriminatory assignment practices.

**COUNT IV**
**Violation of Title VII-Race-based Discrimination–Disparate Treatment**

**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Gold Standard Baking**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 96 as though set forth herein.

97.     This Count arises under Title VII for Defendants MVP and Gold Standard Baking's discriminatory practices assigning laborers through MVP, as described more fully in paragraphs 18 - 67, *supra*, resulting in disparate treatment of Plaintiffs and a class of African American laborers.

98.     As described more fully in paragraphs 18 - 67, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*

99.     As described more fully in paragraphs 18 - 67, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*

100.     As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, all Plaintiffs suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

101.     Defendant MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

102.     Gold Standard Baking failed to exercise reasonable care to ensure that its agents for assignment of laborers, MVP, did not engage in discriminatory hiring practices.

**COUNT V**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**

**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant Gold Standard Baking**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 102 as though set forth herein.

103.    This Count arises under Title VII for Defendant Gold Standard Baking's policy and practice of hiring Latino laborers over African American laborers through its agent or employment agency, MVP, as described more fully in paragraphs 18 - 67, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

104.    As described more fully in paragraphs 18 - 67, *supra*, Defendant Gold Standard Baking has engaged in a practice of securing the vast majority of its laborers through its employment agencies, including MVP.

105.    Gold Standard Baking's practice of securing laborers to work at its Chicago, Illinois facility from employment agencies which prefer to assign and, in fact, do assign Latino laborers over African American laborers has caused a significant disparate impact on Plaintiffs and other similarly situated African American laborers in obtaining work assignments at Gold Standard Baking.

106.    As a direct and proximate result of the above-alleged acts or omissions of Defendant Gold Standard Baking, Plaintiffs and other similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

107.    Gold Standard Baking failed to exercise reasonable care to ensure that its agents for the assignment of laborers, including MVP, did not engage in discriminatory assignment practices.

**COUNT VI**

**Violation of Title VII- Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated African American**
**laborers as against Defendants MVP**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 107 as though set forth herein.

108.     This Count arises under Title VII for Defendant MVP's policy and practice of hiring Latino laborers over African American laborers as described more fully in paragraphs 18 - 67, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

109.     As described more fully in paragraphs 18 - 67, *supra*, Defendant MVP has engaged in a practice of assigning primarily Latino employees to work at third party client companies, including Gold Standard Baking.

110.     MVP's practice of showing preference for assigning Latino laborers over African American workers to work at its third party clients, including Gold Standard Baking, has caused a significant disparate impact on Plaintiffs and other similarly situated African-American laborers in obtaining work assignments through MVP, including at Gold Standard Baking.

111.     As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

112.     MVP failed to exercise reasonable care to ensure that its agents did not engage in discriminatory assignment practices.

*         *         *

WHEREFORE, Plaintiffs and the Class respectfully pray that this Court:

A. allow this action to proceed as a class action against Gold Standard Baking pursuant
   to Rule 23;

B.  enjoin MVP and Gold Standard Baking from continuing or permitting future violations of Title VII and 42 U.S.C. § 1981 for racial discrimination against African American laborers;

C.  enter a judgment in their favor and against MVP and Gold Standard Baking for back pay and front pay damages for Plaintiffs and the Class in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold MVP and Gold Standard Baking jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.


                                        Respectfully submitted,

Dated: August 10, 2017

                                        *s/Christopher J. Williams*
                                        Christopher J. Williams
                                        Alvar Ayala
                                        Workers' Law Office, P.C.
                                        53 W. Jackson Blvd, Suite 701
                                        Chicago, Illinois 60604
                                        (312) 795-9121

                                        Joseph M. Sellers
                                        Shaylyn Cochran
                                        Miriam Nemeth
                                        Cohen, Milstein, Sellers & Toll, P.L.L.C.
                                        1100 New York Ave, N.W., Fifth Fl.
                                        Washington, D.C. 20005
                                        (202) 408-4600

                                        Attorneys for Plaintiffs