UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES ZOLLICOFFER and NORMAN GREEN, on behalf of themselves and similarly situated laborers, | No. 13 CV 1524 |
| Plaintiffs, | |
| v. | Magistrate Judge Young B. Kim |
| GOLD STANDARD BAKING, INC. and PERSONNEL STAFFING GROUP, LLC, d/b/a MOST VALUABLE PERSONNEL, d/b/a MVP, | |
| Defendants. | November 20, 2020 |

**MEMORANDUM OPINION and ORDER**

Before the court in this class-action lawsuit are Plaintiffs' objections to Defendants' requests to serve discovery on absent class members. (R. 814.) For the following reasons, Plaintiffs' objections are sustained:

**Background**

Plaintiffs brought this race discrimination case alleging that Defendant Gold Standard Baking, Inc. ("GSB") had a policy of disfavoring African American laborers for work in its facilities and that Defendant Personnel Staffing Group, LLC, doing business as Most Valuable Personnel ("MVP"), carried out that policy by declining to send African American laborers to GSB. In March 2020 the court certified a class of plaintiffs, later defined as follows: "[African American] laborers who sought work assignments through MVP to work at GSB, but on one or more

occasion were not assigned to work at GSB when a position was available" during a certain statutory period. (R. 786, Mem. Op. at 40-41, 67; R. 795.) In granting class certification, the court determined that there is a common question regarding whether GSB had an illegal policy of instructing MVP not to staff African American laborers at its facilities, and characterized as "peripheral issues" questions such as how many times class members had visited MVP or whether they eventually received assignments at GSB. (Id. at 43-44, 50.) The court also noted that the central contention of whether Defendants had a discriminatory policy of refusing to staff African American laborers would predominate in a trial on liability, and that if necessary, the court could later conduct individualized damages inquiries on questions such as when class members sought work, whether they were qualified for available positions, or whether GSB needed workers on the particular days that class members sought jobs. (Id. at 61, 63.)

After the class was certified, Defendants propounded a total of 25 interrogatories that they seek to serve on absent class members. (R. 814, Pls.' Objs. Exs. A & B.) These interrogatories include questions such as whether the absent class member is African American, when and how often the member sought work through MVP, and whether the member had filed previous complaints of any kind against Defendants. They also ask the absent class members to identify all communications they may have had with respect to assignments through MVP or at GSB, among other things. (Id.) GSB's proposed interrogatories instruct the members to "contact your own attorney if you have any questions." (Id. Ex. B at 1.)

2

## Analysis

Plaintiffs object to Defendants' proposed interrogatories for several reasons. First, they argue that Defendants have a heavy burden to show that discovery on the absent class members is necessary to fairly try questions of liability. They assert that the details Defendants seek all relate to damages, rather than the central question of whether Defendants discriminated against African American laborers in hiring. They also argue that the combined 25 interrogatories are overly broad and unfairly burdensome on absent class members who typically are not required to participate in discovery proceedings. Finally, they argue that Defendants' intent is to whittle down the class by serving interrogatories that many absent class members will not be able to respond to without the assistance of counsel. In response, Defendants argue that the proposed questions speak to threshold issues meant to identify who belongs to the certified class and are necessary to determine liability, not just damages.

As an initial matter, the court rejects Defendants' attempt to characterize Plaintiffs' arguments as mere "general objections" subject to waiver for their lack of specificity. (R. 821, GSB Resp. at 2-3; R. 822, MVP Resp. at 3.) None of the cases they cite in support of that argument address discovery directed to absent class members, and they all involve situations where a party responded to discovery simply by asserting rote, boilerplate objections or with such lack of specificity that the objections were meaningless. *See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 CV 10340, 2017 WL 4005918, at *2 (N.D. Ill. Sept. 12,

3

2017), *opinion amended and superseded by BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 CV 10340, 2017 WL 5890923 (N.D. Ill. Nov. 29, 2017); *In re: Jimmy John's Overtime Lit.*, No. 14 CV 5509, 2016 WL 10957249, at *1 (N.D. Ill. July 28, 2016); *Flava Works, Inc. v. Gunter*, No. 10 CV 6517, 2013 WL 5770558, at *1 (N.D. Ill. Oct. 24, 2013). Here Plaintiffs have presented a detailed, multi-front argument as to why discovery from absent class members is disfavored generally and unnecessary here specifically. They have explained why they believe the interrogatories would be overly burdensome, highlighting how several of the individual interrogatories illustrate the challenges they argue the absent class members would face in responding. (R. 814, Pls.' Obj. at 4-8.) Accordingly, their arguments cannot fairly be characterized as meaningless general objections.

Turning to the merits, courts have recognized a central tension between subjecting absent class members to individual discovery and Federal Rule of Civil Procedure 23's underlying idea that absent class members are not required to take any affirmative steps to participate in class action litigation. *See, e.g., Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992); *McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008); *Morgan v. United Parcel Serv. of Am., Inc.*, No. 4:94-CV-1184 (CEJ), 1998 WL 785322, at *1 (E.D. Mo. Oct. 16, 1998); *Transam. Refining Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621 (S.D. Tex. 1991). Despite this tension, absent class members may be required to submit to discovery in certain circumstances where the information sought is "necessary or helpful" to the proper adjudication of a suit, and where the requests

4

are "not designed solely to determine the identity and amount of the class members' claims." *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971). The party seeking discovery from absent class members has the burden of showing that: (1) the discovery is necessary; (2) the discovery seeks information that the proponent does not already have; (3) the request is not designed to whittle down the class size or take unfair advantage of absent members; and (4) a full response will not require absent class members to seek the assistance of counsel. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 & n.24 (7th Cir. 1974); *see also McPhail*, 251 F.R.D. at 517. Even where those criteria are met, the proposed discovery "must be carefully limited to protect absent class members from harassment, and to ensure that the advantage of streamlined discovery in a class action lawsuit is not lost." *Bell v. Woodward Governor Co.*, No. 03 CV 50190, 2005 WL 8179364, at *1 (N.D. Ill. Nov. 7, 2005).

Defendants have not shown that the proposed discovery is necessary to the fair adjudication of this matter, at least at the current stage. GSB admits that its proposed interrogatories are meant primarily to identify members of the class, noting that the absent class members' "race, prior interactions with Defendant MVP, and mitigation" are all "threshold questions regarding class membership." (R. 821, GSB Resp. at 1-2.) But the Seventh Circuit has made clear that it is improper to subject absent class members to discovery meant "solely to determine the identity and amount of the class members' claims." *See Brennan*, 450 F.2d at

1005; *see also Chaffee v. A&P Tea Co.*, Nos. 79 CV 2735, 79 CV 3625, 1987 WL 9308, at *2-*3 (N.D. Ill. Apr. 6, 1987).

MVP argues that the proposed interrogatories are not just relevant to identifying class members because, according to them, their questions inform the ultimate question of liability, which is whether Defendants had a policy of excluding African American laborers from available work assignments. (R. 822, MVP Resp. at 3.) But MVP does not explain how each of its 10 proposed interrogatories is designed to meet that goal. MVP's proposed interrogatories include questions regarding absent class members' subjective experiences, such as whether they were "satisfied" with their work assignments and their reasons for deciding to stop seeking assignments through MVP. They also ask whether absent class members filed complaints against MVP or contacted an attorney about discrimination at MVP and require them to describe communications they had with anyone about attempts to get employment at GSB through MVP. (R. 814, Pls.' Obj. Ex. A at 2-3.) These are broad questions likely to confuse absent class members, especially to the extent they seek details regarding years-old communications. MVP has not shown why "justice to all parties" requires that absent class members provide this information. *See Brennan*, 450 F.2d at 1005. Moreover, to the extent the interrogatories seek information about when and how often absent class members sought work through MVP, (see R. 814, Pls.' Obj. Ex. A at 1-2), the court made clear in the opinion certifying the class that these are "peripheral issues" that do not speak to the common issue of liability, and instead can be hashed out when the court turns to

6

the question of damages, (R. 786, Mem. Op. at 50, 61). The information Defendants seek is overly broad and not necessary to determine the underlying common issue of liability, because such questions can be resolved on an individual basis if necessary once liability is determined. Accordingly, Defendants have not shown that the proposed discovery is necessary at this time.

It should be noted that GSB suggests that the court disregard any authority Plaintiffs cite that arose under Title VII, based on the Supreme Court's decision in *Comcast Corporation v. National Association of African-American Media*, __ U.S. __, 140 S. Ct. 1009, 1017 (2020). In *Comcast* the Court held that although it is enough to show that race is a motivating factor of an adverse employment decision to prevail under Title VII, but-for causation is required to prevail under 42 U.S.C. § 1981. *Id.* at 1017-19. Based on that distinction, GSB argues that any Title VII cases that speak to discovery questions similar to those presented here are not relevant to Plaintiffs' claims, which arise under Section 1981. (R. 821, GSB Resp. at 4.) But GSB has not supported its suggestion that after *Comcast* Title VII cases no longer inform Section 1981 claims at the discovery level. Moreover, although a trial plan has not yet been solidified in this case, the court gave clear signals in the class certification decision—issued after the *Comcast* decision was published—that it intends to proceed with a liability phase before conducting potentially necessary individual damages inquiries. (See, e.g., R. 786, Mem. Op. at 63.) For these reasons the court disagrees with Defendants that Title VII cases have no bearing on the issue before the court.

Turning to the issue of whether the proposed discovery seeks information that Defendants do not already have, to the extent that Defendants failed to keep records regarding job placements or internal complaints of discrimination, those are short-comings of their own making. On the other hand, because some of the information sought here would not be kept in the normal course of business or otherwise be in Defendants' possession, this factor does not cut strongly in either direction.

Next the court considers whether the proposed interrogatories are designed to chip away at the class size or to take unfair advantage of absent class members. *See Clark*, 501 F.2d at 340. Given the breadth and complexity of the proposed interrogatories, there is a high likelihood that absent class members will be confused or unsure about how to respond. *See McPhail*, 251 F.R.D. at 518 (noting that discovery is inappropriate if the level of detail sought "would deter many class members from responding"). Although Defendants have said they will consolidate their proposed discovery to reduce the burden on recipients, even absent the current redundancies, the details at the heart of the proposed interrogatories are likely to confuse or overwhelm absent class members. Defendants could seek to dismiss absent class members who fail to respond to discovery requests, so there is reason to believe that these broad interrogatories seeking years-old details are designed in part to reduce the class size. *See Clark*, 501 F.2d at 340. Accordingly, this factor weighs against the proposed discovery.

The court also agrees with Plaintiffs that responding to the proposed interrogatories may require absent class members to consult with counsel. *See id.* at 340 n. 24. In fact, GSB explicitly contemplates this possibility, as revealed in the instructions it includes with its proposed interrogatories directing class members to "contact your own attorney if you have questions." (R. 814, Pls.' Obj. Ex. B at 1.) And given that MVP's proposed interrogatories seeks information about prior claims filed by absent class members and communications that include past interactions with attorneys, (see id. Ex. A at 2), recipients may need to consult with counsel to avoid relinquishing the privilege that might otherwise attach to such communications. Taken together, all of these considerations point to the conclusion that absent class members should not be subjected to the proposed discovery.

## Conclusion

Allowing the proposed discovery would unfairly undermine what is meant to be a streamlined class action process, while causing unnecessary delay in an already almost eight-year old case. Accordingly, for the foregoing reasons Plaintiffs' objections are sustained.

                                                **ENTER:**

                                                **Young B. Kim**
                                                **United States Magistrate Judge**