# ATTACHMENT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES ZOLLICOFFER and NORMAN GREEN, on behalf of themselves and similarly situated laborers,<br><br>Plaintiffs,<br><br> v.<br><br>GOLD STANDARD BAKING, INC., PERSONNEL STAFFING GROUP, LLC d/b/a MOST VALUABLE PERSONNEL d/b/a MVP<br><br>Defendants. | Case No. 13-cv-1524<br><br>Honorable Sara L. Ellis<br><br>Magistrate Judge Kim |

**PARTIAL CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
WITH DEFENDANT PERSONNEL STAFFING GROUP, LLC**

This Partial Class Action Settlement Agreement and Release (the "Settlement Agreement") is entered into by and between Plaintiffs James Zollicoffer and Norman Green ("Plaintiffs" or "Named Plaintiffs") and the class of individuals they represent (as hereinafter defined) and Defendant Personnel Staffing Group, LLC a/k/a PSG OLDCO, LLC d/b/a MVP (hereafter "PSG", "MVP" or "Settling Defendant," and together with the Named Plaintiffs, the "Settling Parties").

I.      **INTRODUCTION**

Subject to approval by the Court, this Settlement Agreement sets forth the full and final terms by which the Named Plaintiffs, on behalf of themselves and a class of African Americans (specifically defined below in Section III.A.7.), on the one hand, and PSG, on the other hand, have settled and resolved all race discrimination claims, and claims for fees, costs, and expenses that were raised or could have been raised in the Action captioned *Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.* (Case No. 13-cv-01524 (N.D. Ill. 2013)), in the United States District Court for the Northern District of Illinois, against the Settling Defendant, as described in greater detail in

1

Section V below. Any race discrimination claims against the other defendant in this action, Gold Standard Baking, Inc. (hereafter "GSB"), are the subject of a separate class action settlement agreement (hereafter the "GSB Settlement"). This Settlement Agreement, along with the GSB Settlement, if approved by the Court, will resolve this matter in its entirety.

## II.    NATURE AND RESOLUTION OF THE CASE

A.    On February 27, 2013, certain plaintiffs, on behalf of themselves and all other similarly situated individuals, filed a Class Action Complaint in the United States District Court for the Northern District of Illinois, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). On August 11, 2017, Plaintiffs filed their Sixth Amended Class Action Complaint, alleging violations of Section 1981, which is the operative complaint in this matter (the "Complaint"). Dkt. No. 466.

B.    On July 13, 2020, the Court entered an order certifying a class defined as:

> African American laborers who sought work assignments through MVP to work at GSB, but on one or more occasion were not assigned to work at GSB when a position was available during the period of two years prior to the filing of Plaintiffs' original complaint for the § 1981 claims, or February 27, 2011, up through and including December 31, 2014.

> Dkt. No. 795, at *4.[1]

C.    The Settling Defendant denies all liability and wrongdoing associated with the claims alleged in the Complaint or any prior pleading filed by any plaintiff to this Action. Specifically, the Settling Defendant denies that it discriminated against the Plaintiffs or other African Americans on the basis of race in violation of Title VII, Section 1981, or any other state

---

[1] In the July 13, 2020 Order, the Court appointed Plaintiff Norman Green as a class representative but declined to appoint Plaintiff James Zollicoffer as a class representative. *Id.* On October 19, 2020, the Court entered an order reconsidering the decision not to appoint Mr. Zollicoffer as a class representative and appointed Mr. Zollicoffer as a class representative along with Mr. Green. Dkt. No. 827.

or federal law.  The Settling Defendant further denies all other allegations of wrongdoing in the Complaint or that had been raised against PSG in the Action.

  D.  Counsel for the Parties are experienced class action attorneys. They have vigorously pursued their positions and the rights of their clients through extensive briefing, legal and factual analysis, as well as discovery. In light of the novel legal issues briefed to date and the potential risk and delay in the event this case proceeded to trial, the Parties elected to engage in settlement discussions during the time the Action has been pending.

  E.  In late 2021, PSG advised Plaintiffs that, due to a series of major financial setbacks affecting its long-term viability, its primary secured lenders forced PSG to sell its assets and that an asset sale was consummated on or about July 30, 2021. PSG provided Plaintiffs with substantial documentation and other information concerning its financial situation. To assist with the negotiations, in early 2022 the parties re-engaged the Hon. Morton Denlow (Ret.), who had previously assisted with settlement negotiations, for mediation. During the negotiations, counsel for the Plaintiffs and PSG bargained vigorously on behalf of their respective clients. Among other considerations, the precarious financial condition of PSG, based on publicly available information and confidential financial information produced by PSG, and the risks and uncertainties of pursuing claims against potential successors and alter egos led the Plaintiffs to settle with PSG at this time following a full-day mediation session with Judge Denlow.  All negotiations were conducted at arm's length and in good faith.

  F.  The Named Plaintiffs and the Settling Defendant believe that the Settlement Amount (as defined in Section III.A.31 below) is fair and reasonable based on PSG financial condition, and that it is in their best interests and the best interests of the Class to resolve their claims against PSG at this time.

G.     The Settling Parties and their counsel recognize that following more than nine years of litigation, significant uncertainties remain. In the absence of an approved settlement, they would face further litigation, including but not limited to, a motion to amend the complaint to add defendants, a motion for summary judgment from PSG, a trial, and potential appellate proceedings, all of which would consume time and resources, and present ongoing litigation risks and uncertainties. The Settling Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, and have decided that an amicable settlement pursuant to the terms and conditions of this Settlement Agreement is more beneficial to them than continued litigation.

H.     The Settling Defendant specifically and generally denies all of the claims asserted in the Action, denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Action, and makes no concession or admission of wrongdoing or liability of any kind whatsoever. This Settlement Agreement does not, and is not intended to, constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity, or accuracy of any of the allegations, claims, or defenses of any party in this case. The Settling Defendant does not admit or concede anything, expressly or impliedly by entering into this Settlement Agreement. The Settling Defendant denies that it has in any way violated Title VII, Section 1981, or any parallel federal, state, and local laws prohibiting race discrimination or retaliation, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule, or executive order, or any other obligation or duty at law or in equity. Neither the Court nor any other court has made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in this Action.

I.       Neither this Settlement Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications between the Settling Parties, nor any materials prepared, exchanged, issued or used during the course of the negotiations leading to this Settlement Agreement, is intended by the Settling Parties to, nor shall any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature, including as evidence of discrimination, retaliation, or harassment, or as evidence of any violation of Title VII, Section 1981, parallel federal, state and local laws prohibiting race discrimination or retaliation, the common law of any jurisdiction, or any other federal, state, or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. Notwithstanding the foregoing, this Settlement Agreement may be used in Court or in mediation to enforce or implement any provision of this Settlement Agreement or implement any orders or judgments of the Court entered in connection herewith.

## III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT

A.      Definitions. The defined terms set forth herein shall have the meanings ascribed to them below.

1.          "Action" means *Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.* (Case No. 13-cv-01524 (N.D. Ill. 2013)).

2.          Average Wage of PSG Laborer Assigned to GSB" refers to the average wages earned by all laborers assigned to GSB by PSG during the Settlement Class Period, regardless of race. Average wages are calculated by multiplying the average hours worked per above laborer by the Illinois minimum wage rate of $8.25 per hour. For purposes of this Settlement, this average amount shall be the presumed amount of back pay lost by any class member.

3.         "Award(s)" means the Monetary Awards as described in Sections III.A.19 and III.A.30. below.

4.         "Claimants" means the Class Members who have submitted a Valid Claim Form to the Claims Administrator. The Named Plaintiffs shall be deemed to be Claimants without being required to submit a Claim Form.

5.         "Claim Form" means the form, attached as Exhibit A, that Claimants must submit to the Claims Administrator within the time directed by the Court in order to receive a Monetary Award in the claims process described in Section VI.C. below.

6.         "Claims Administrator" means Settlement Services, Inc., located in Tallahassee, Florida, the third-party claims administration firm to be selected by Class Counsel to fulfill the duties set forth herein, including to serve Notice and administer aspects of the claims process and Settlement Fund pursuant to Section VI below and related orders of the Court.

7.         "Claims Administrative Costs" means all costs incurred by the Claims Administrator in connection with the administration of the Settlement Agreement and the Settlement Fund including, but not limited to, those related to sending Notice, claims processing, legal advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), the Claims Administrator's fees and expenses, and costs of the claims resolution process. The Claims Administration costs shall be paid from the Settlement Amount, and the Settling Defendant will not have any responsibility for contributing additional funds to the Qualified Settlement Fund. If the settlement with GSB is simultaneously given preliminary approval by the Court, all claims administration costs will be divided equally between this Class Settlement Fund and the Class Settlement Fund in the GSB Settlement.

8.        "Class" means the class that the Court certified in its July 13, 2020 order [799] and modified by its October 19, 2020 order [827], which includes named Plaintiffs Zollicoffer and Green and is defined as:

> African American laborers who sought work assignments through MVP to work at GSB, but on one or more occasion were not assigned to work at GSB when a position was available during the period of two years prior to the filing of Plaintiffs' original complaint for the § 1981 claims, or February 27, 2011, up through and including December 31, 2014.

9.        "Class Claims Certified" means all Released Claims as defined herein.

10.       "Class Counsel" means Joseph Sellers and Harini Srinivasan of Cohen, Milstein, Sellers & Toll, P.L.L.C. and Christopher Wilmes and Caryn Lederer of Hughes Socol Piers Resnick & Dym, Ltd.

11.       "Class Member" means an individual who is a member of the Class and who does not opt out of this Settlement Agreement through the opt-out procedures set forth herein.  For the avoidance of doubt, the Parties agree that Plaintiff Antwoin Hunt is a member of the Class and that his continued participation as a Class Member through Judgment is a material condition of this Settlement Agreement.

12.       "Class Period" means the period running from February 27, 2011 through December 31, 2014.

13.       "Class Settlement Fund" means Three Hundred Sixty-Five Thousand and 00/100 ($365,000.00) of the Settlement Fund less the costs of claims administration, the service awards to the Named Plaintiffs awarded by the Court as described in Section VII.B and the employer's share of payroll taxes, plus any amount not awarded as attorneys' fees and costs as described in Section VII.A.

14.        "Court" means the United States District Court for the Northern District of Illinois in the Eastern Division.

15.        "Effective Date" means the date on which all of the following have  occurred: (1) the Court has finally approved this Settlement Agreement; (2) 91 days have elapsed since PSG has paid the full Settlement Amount into the Qualifed Settlement Fund; (3) the Court has entered an Order and Judgment dismissing PSG from the Action with prejudice, but retaining jurisdiction for the limited purpose of enforcing this Settlement Agreement; and (4) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing *en banc*, petitions for *certiorari* or appellate review) has been finally resolved.

16.        "Fairness Hearing" means the hearing at which the Court will consider final approval of this Settlement Agreement and related matters.

17.        "Final Approval Date" means the date on which the Court grants final approval of this Settlement Agreement.

18.        "Judgment" means the judgment to be rendered by the Court pursuant to this Settlement Agreement.

19.        "Monetary Awards" means the individual monetary awards given to Claimants as described in Section VI below.

20.        "Net Settlement Fund" means the remainder of the Settlement Amount after deductions for claims administration costs, court-approved attorneys' fees and costs as described in Section VII.A., and court-approved Service Awards as described in Section VII.B.

21.        "Notice" means the "Notice of Class Action, Proposed Settlement Agreement, and Fairness Hearing," in the form attached hereto as Exhibits B (Abridged Notice) and C (Unabridged Notice).

8

22.     "Notice Packet" means the Claim Form and the Abridged Notice of Class Action, Proposed Settlement Agreement, and Fairness Hearing, which the Claims Administrator will mail directly to Class Members and potential Class Members in the forms attached hereto as Exhibits A and B.

23.     "Opt-Out Request" means a written request to the Claims Administrator signed by a Class Member requesting exclusion from this Settlement Agreement, which must: (i) be signed by the Class Member; (ii) contain the name, address, and telephone number of the Class Member requesting exclusion; (iii) clearly state that the Class Member is aware that by opting out he or she will forego the opportunity to receive monetary benefits from this Settlement Agreement, and that he or she does not wish to be included in the Settlement Agreement; (iv) be returned by mail to the Claims Administrator at the specified address; and (v) be received by a date certain, to be specified on the Notice.

24.     "Opt-Outs" means any Class Member who timely submits an Opt-Out Request.

25.     "Order Granting Preliminary Approval" means the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Settlement Agreement, the manner and timing of providing notice to the Class, and the time period for objections, substantially in the form attached hereto as Exhibit D.

26.     "Plaintiffs' Counsel" means Class Counsel as defined above and Christopher J. Williams of the National Legal Advocacy Network (formerly of Workers' Law Office, PC).

27.     "Preliminary Approval Date" means the date that the Court enters the Order Granting Preliminary Approval of this Settlement Agreeement.

28.     "Released Claims" means any and all race discrimination claims against the Settling Defendant's Releasees and that arise out of the same transactions or occurrences alleged in the

Complaint. The scope of release for the Settling Defendant's Releasees shall be the same as permitted under the doctrine of *res judicata* had a judgment been entered in the Settling Defendant's favor. The Released Claims also include the release of any and all claims for fees, including attorneys' fees, costs and expenses incurred by any attorney or anyone acting on behalf of any Named Plaintiff or plaintiff to this Action, and shall include a release of attorneys' liens in favor of PSG, if any. The Released Claims do not include, and explicitly exclude, all claims against PSG, its current, former, and future affiliates, including parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns or joint employer raised in the matter of *Eagle, et al. v. Vee Pak, Inc., et al.*, (Case No. 12-cv-09672 (N.D. Ill. 2012)) (hereafter the "*Vee Pak* Matter"), which are the subject of a separate settlement agreement (hereafter the "PSG-Vee Pak Subclass Settlement"). The Released Claims do not include, and explicitly exclude, all claims against GSB, its current, former, and future affiliates, including parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns. The release of claims by Plaintiffs and the Class against GSB are the subject of the separate GSB Settlement.

29.     "Remainder Fund" means any portion of the Total Settlement Amount funds not distributed to Claimants pursuant to Section VI.A.3. Award checks that are issued to Claimants but are not negotiated and become void pursuant to Section VI.A.3(e) shall not become a part of the Remainder Fund and shall be remitted to the Office of Illinois Treasurer – Unclaimed Property Division and shall follow the procedures set forth by the Illinois Treasurer to associate the unclaimed amounts with the Class Member as set forth in Section VI.A.3(g).

30.     "Service Award" means an amount approved by the Court to be paid to the Named Plaintiffs as set forth in Section VII.B. in addition to the Monetary Award of each as a Claimant,

in recognition of their efforts in coming forward as the Plaintiffs and otherwise benefitting the Class.

31.     "Settlement Amount" means the amount of Six Hundred Sixty-Five Thousand and 00/100 Dollars ($665,000.00) that PSG will pay under the terms of this Settlement Agreement for the Monetary Awards to Class Members, including the employee's share of payroll taxes, Plaintiffs and Class Counsel's attorneys' fees and costs, Administrative Costs and Service Awards. The Settlement Amount shall be the only payment obligation of PSG or its insurers under this Settlement Agreement or otherwise in connection with the complete resolution of this Action against PSG.

32.     "Settlement Fund" means the Six Hundred Sixty-Five Thousand and 00/100 Dollars ($665,000.00), including any interest earned thereon, to be paid by PSG and held, invested, administered, and disbursed pursuant to the terms of this Settlement Agreement as approved by the Court. The Parties agree that PSG's and its insurers' payment obligations as to any Plaintiff or Class Member in this Action are limited to its payment into the Settlement Fund.

33.     "Settling Defendant's Releasees" means Settling Defendant and each of its current, former, and future affiliates, including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, employee benefit plans (and their agents, administrators, fiduciaries, insurers and reinsurers), principals, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and representative capacities (collectively referred to as the "Released Parties"). For purposes of this Settlement Agreement, the Released Parties shall also include Vensure Employer Services, Inc., MVP Payroll Acquisition, LLC, MVP Payroll Processing, LLC, MVP Payroll

Financing, LLC, MVP Payroll Contracts Holding, LLC, Workflex LLC, Source Management International LLC, 2R Staffing, LLC, Rud Management, LLC, DALB Holdings, LLC, Dash Management, Inc., MVP Payroll Contracts Holding, LLC, and Daniel Barnett. PSG affirms and, for the sake of clarity, the Settling Parties expressly agree that GSB, its current, former, and future affiliates, including GSB's parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns fall within the definition of "Settling Defendant's Releasees." The release of claims by Plaintiffs and the Class against GSB are the subject of the separate GSB Settlement.

34.     "Settling Defendant's Counsel" means the law firms of Paul Hastings, LLP and Korey Richardson, LLP.

35.     "Valid Claim" means a claim that is filed with the Claims Administrator within the timeframe designated by the Court and which is signed, dated with the response to both questions (1) and (2)(a) contained in the Claim Form, attached hereto as Exhibit A, answered under oath in the affirmative and is otherwise materially complete.[2]

    B.     Cooperation. The Parties agree that they will cooperate to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement. The Parties agree to accept non-material and procedural changes to this Settlement Agreement if required by the Court in

---

[2] Plaintiff Zollicoffer and PSG have agreed to simultaneously settle the *Vee Pak* Matter against PSG on a class-wide basis. As the members of the class in this matter and the PSG Subclass in the *Vee Pak* Matter largely overlap, in order to preserve resources in the claims administration process, the parties have agreed to seek authorization by the courts in both matters to send a single notice to members of both classes. Therefore, the Claim Form contains a question 2(b) related to seeking assignments during the PSG Subclass period in the *Vee Pak* Matter and is not required to be completed in the affirmative to be valid for purposes of receiving a settlement award in this matter.

connection with Final Approval of the Settlement Agreement, but are not obligated to accept any changes in the monetary amount of relief, or any other material substantive change.

## IV.     COURT APPROVAL, CLASS NOTICE, AND FAIRNESS HEARING

A.     <u>Jurisdiction</u>.  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Settlement Agreement, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Settlement Agreement.

B.     <u>Preliminary Approval</u>.

1.     Within fourteen (14) days of the execution of this Settlement Agreement, Plaintiffs shall provide the Settling Defendant a copy of their proposed motion for approval and proposed order, and within seven (7) days therafter Settling Defendant may provide Plaintiffs with any comments and suggestions to the proposed motion and order, which Plaintiffs shall consider in good faith. Within seven (7) days after receiving Settling Defendant's comments and suggestions, Plaintiffs shall file their motion with the Court, unopposed by the Settling Defendant, for an order preliminarily approving this Settlement Agreement; approving the Notice to be sent to Class Members and potential Class Members describing the terms of the Settlement Agreement and informing them of their rights to submit objections or opt out; and preliminarily enjoining, pending the outcome of the Fairness Hearing, (i) all Class Members from commencing, prosecuting, or maintaining any claim against PSG already asserted in, or encompassed by, this Action, and (ii) all Class Members from commencing, prosecuting, pursuing or maintaining in any court or forum other than the Court, any claim, action, or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision, or ruling of the Court against PSG in connection with this Settlement Agreement or against PSG otherwise in connection with this Action.

C.     Notice to Class Members; Responses to the Notice.

1.     The Court will appoint a Claims Administrator as the Claims Administrator to perform the following tasks, among others:

a.     Distribute Preliminary and Final Notice to Class Members and potential Class Members;

b.     Receive and forward to Class Counsel and the Settling Defendant any Objections or Opt-Out Request from Class Members;

c.     Distribute and receive Claim Forms and other documents; and

d.     Properly process the Awards, including for tax purposes as directed in Section VI.E below.

2.     No later than sixty (60) calendar days following the Preliminary Approval Date, or as directed by the Court, the Claims Administrator shall mail the Notice Packet, made up of the Claim Form and Abridged Noticed attached hereto as Exhibits B and C, respectively, to each Class Member and potential Class Member contained on the list of assignees from its Cicero Branch Office during the Class Period ("MVP Assignee List"), which was utilized by the Claims Administrator to provide notice to Class Members and potential Class Members of their rights to opt out of the Class and approved by the Court [844] and [859], as updated by the Claims Administrator based on communications with Class Members and potential Class Members.

3.     In order to provide the best notice practicable, before mailing the Notice and Claim Forms, the Claims Administrator will run the MVP Assignee List, as updated by the Claims Administrator, through the United States Postal Service's National Change of Address database ("NCOA").

4.        If envelopes from the mailing of the Notice and Claim Forms are returned with forwarding addresses, the Claims Administrator will re-mail the Notice and Claim Forms to the new addresses within five (5) business days.

5.        In the event that a Notice and Claim Form are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender," the Claims Administrator shall perform a standard skip trace in an effort to ascertain the current address of the particular Class Member or potential Class Member in question, and, if such an address is ascertained, the Claims Administrator will re-send the Notice and Claim Form within five (5) business days of receiving the newly ascertained address; if no updated address is obtained for that Class Member or potential Class Member, the duty of the Settling Parties and the Claims Administrator to deliver the Notice and Claim Form shall be deemed satisfied.

6.        No later than the date of the first mailing of Notice Packets to the Class List, the Claims Administrator shall cause to be established a Class Action Settlement website at the URL www.MVP_Settlement.com, or similar name as available, which shall contain the information in the Notice, Exhibits B and C, as well as a downloadable claim form, Exhibit A, which shall remain active for not less than the sixty (60) day claim period.

7.        Within fourteen (14) calendars days of the mailing of the Notice Packet, the Claims Administrator shall cause to be published in the Chicago Sun Times and The Voice Newspapers – two community newspapers serving the African American community in the area where the MVP Cicero Office was previously located – and through social media targeted to African Americans in the area of the MVP Cicero Office the information contained in Exhibit E, attached hereto.

        D.        Objections.

15

1.      Class Member objections to this Settlement Agreement must be in writing, signed, and submitted to the Claims Administrator (with copies served on the Settling Parties' counsel); must include a detailed description of the basis of the objection; and must indicate whether the Class Member intends to appear at the Fairness Hearing. To be timely and considered by the Court, objections must be received at least three days before the Final Approval Hearing.

2.      The Claims Administrator shall provide counsel for both parties all objections it receives from Class Members.

3.      Class Counsel will file with the Court all timely submitted and served objections with the Court.

        E.      Exclusions/Opt-Outs.

1.      A Class Member who submits a timely Request for Exclusion Form or Opt-Out Request shall NOT: (i) be bound by an order of final judgment entered in this Lawsuit; (ii) be entitled to benefits or relief under this Settlement Agreement; (iii) gain rights by virtue of this Settlement Agreement; and (iv) be entitled to object to the Settlement Agreement or appeal from an order of the Court.

2.      The notice shall advise Class Members of their option to exclude themselves from this Settlement Agreement, the procedure by which to do so and that, if they exclude themselves from the Settlement Agreement: (i) they will not be entitled to receive any award or other benefit from the Settlement; (ii) they will not be bound by the terms of the Settlement, including by the release of claims against the Released Parties, and will be able to pursue claims on their own against the Released Parties, and (iii) any decision to exclude themselves from this Settlement will not impact their rights against the Non-Settling Defendant.

3.        Any Class Member who wishes to opt out of the Class for purposes of this Settlement Agreement must mail to the Claims Administrator a written, signed statement that he or she is opting out. Opt-Out Requests must be postmarked within sixty (60) days after Notice is mailed to Class Members. Upon receipt of an Opt-Out Request, the Claims Administrator shall promptly notify and send a copy of the Opt-Out Request to counsel for the Settling Defendant and to Class Counsel, and shall provide Class Counsel with such Class Member's last known telephone number as reflected in the Opt-Out Request. If a fully completed and properly executed Request for Exclusion is not timely received by the Settlement Administrator from a Class Member, then that Class Member will be deemed to have forever waived his or her right to opt out of the Class.  The Claims Administrator shall determine whether a Class Member has timely and properly opted out of this Settlement Agreement. Those decisions will be final. Class Counsel shall file with the Court all timely Opt-Out Requests.

F.        Fairness Hearing.

1.        Upon Preliminary Approval, a briefing schedule and Fairness Hearing date will be set at the Court's convenience. Class Counsel will prepare, for Defense Counsel's review, a motion for final approval of the Settlement which will include a proposed order, (1) granting Final Approval of the Settlement; (2) adjudging the terms of settlement to be fair, reasonable, and adequate; (3) directing the Parties to carry out the Settlement's terms and provisions, including by distributing settlement awards to Class Members; (4) approving payment of attorneys' fees, litigation expenses, and costs to Class Counsel in an amount not to exceed Three Hundred Thousand and 00/100 Dollars ($300,000.00); (5) finding that the settlement was made in good faith pursuant to Section 2(c) of the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2(c) and barring any third-party claims for contribution and/or indemnity against Defendant PSG.

2.          The Plaintiffs' Motion for Final Approval will be due no earlier than forty-five (45) days following the close of the opt-out and claim period, and the Fairness Hearing will be held no earlier than sixty (60) days following the close of the opt-out and claim period, unless agreed to by the Settling Parties or set by the Court. Neither this Settlement Agreement nor the Court's Preliminary or Final Approval hereof shall be admissible in any court regarding any issue or subject (except for the purpose of enforcing this Settlement Agreement).

3.          Plaintiffs' Motion for an Award of Fees and Costs shall be filed by Plaintiffs' Counsel simultaneously with the Motion for Final Approval. The notice shall advise Class Members the date such motion will be filed and that it will be made available on the Settlement website for download and/or review.

4.          The time periods referenced in this Section IV are guidelines; actual dates will be determined by the Court.

5.          If this Settlement Agreement is not approved by the Court, or for any other reason is terminated or fails to become effective in accordance with its terms (or if, following approval by this Court, such approval is reversed or substantively modified), the Settling Parties shall be restored to their respective positions that existed in this Action prior to entering into this Settlement Agreement; the terms and provisions of this Settlement Agreement shall have no force or effect and shall not be used in this Action or in any proceeding for any purpose; the Settlement Fund shall be returned to the Settling Defendants, including any interest earned through the date of termination (after deducting all costs and expenses, including costs of providing Notice to Class Members, and all costs paid or incurred by the Claims Administrator, as of the date of termination); any judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and the litigation of the Action will resume as if there

had been no Settlement Agreement. The Settling Parties retain all rights, claims, and defenses to any of the allegations asserted in this Action and the Settling Defendant retains its right to appeal class certification. This Settlement Agreement will not be considered an admission of liability or damages by the Settling Defendant.

## V.    RELEASE/BAR OF CLAIMS

A.    As of the Effective Date, all Class Members will irrevocably, unconditionally and forever release all Released Claims as defined in Section III.A.27. above. Class Members (including their heirs, administrators, representatives, executors, successors, and assigns) expressly waive any and all provisions, rights and benefits conferred under or by any law of any state or territory of the United States. The claims being released are the same as the Class Claims Certified.

B.    <u>Named Plaintiffs' General Release</u>.  As a condition of receiving a Service Award in conjunction with this Settlement Agreement, in this "General Release" the Named Plaintiffs knowingly and voluntarily release and forever discharge the Settling Defendant's Releasees as defined herein, of and from any and all claims, known and unknown, asserted or unasserted, which the Named Plaintiffs has or may have against Settling Defendant's Releasees as of the date of execution of this Settlement Agreement except as limited in Section V.C. below, including any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;

19

- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Illinois Human Rights Act;
- 820 ILCS 305/4(h) of the Illinois Workers' Compensation Act;
- Illinois common law regarding retaliation or discrimination for filing a workers' compensation claim;
- Illinois Equal Pay Act;
- Illinois School Visitation Rights Act;
- Illinois AIDS Confidentiality Act;
- Illinois Right to Privacy in the Workplace Act;
- Illinois Genetic Information Privacy Act;
- Illinois One Day Rest in Seven Act;
- Illinois Eight Hour Work Day Act;
- Illinois Health and Safety Act;
- Illinois Whistleblower Act;
- Illinois Victims' Economic Safety and Security Act;
- Illinois Worker Adjustment and Retraining Notification Act;
- Illinois Personnel Records Review Act;
- Illinois Criminal Identification Act;
- Illinois Voter Leave Act;
- Illinois Family Military Leave Act;
- Illinois Joint Agency Rules of Sex Discrimination;
- Illinois Joint Agency Rules on National Origin Discrimination;
- Illinois Human Rights Commission Rules on Handicap Discrimination;
- Illinois Human Rights Commission Rules on Unfavorable Military Discharge Discrimination;
- Smoke Free Illinois Act;
- Illinois Blood Donation Leave Act;
- Illinois Civil Patrol Leave Law
- Illinois Jury Duty Leave Law
- Illinois Official Meetings Leave Law
- Illinois Witness Duty Leave Law
- Illinois Working Mothers in the Workplace Act;
- Illinois Common Law Claims for Unlawful Retaliatory Discharge in Violation of Public Policy;
- Illinois Employee Sick Leave Act;
- Illinois Child Bereavement Leave Act;
- Illinois Biometric Information Privacy Act;
- Cook County Human Rights Ordinance;
- Cook County Earned Sick Leave Ordinance;
- Chicago Human Rights Ordinance, as amended;
- Chicago Earned Sick Leave Ordinance;
- any other federal, state or local law, rule, regulation, or ordinance
- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

In exchange for providing this General Release, Settling Defendant shall pay the Named Plaintiffs the Service Award.

C.     The Named Plaintiffs' General Release in this Settlement Agreement explicitly excludes all claims against PSG, its current, former, and future affiliates, including PSG's parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns or joint employer raised in the *Vee Pak* Matter, which are the subject of the separate PSG-Vee Pak Subclass Settlement, and all claims against GSB, its current, former, and future affiliates, including parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, which are the subject of the separate GSB Settlement. The General Release does not waive any rights that cannot be waived by law, including the Named Plaintiffs' right to file a charge of discrimination with an administrative agency, such as the U.S. Equal Employment Opportunity Commission and their right to participate in any agency investigation or proceeding. The Named Plaintiffs are waiving, however, any right to recover money in connection with such a charge or investigation involving a released claim, whether initiated by a Named Plaintiff or by another party, against PSG during the Class Period.

D.     The terms of the Releases, set forth in Section V.A. above for Class Members and Section V.B. above for the Named Plaintiffs are a material part of this Settlement Agreement, and are hereby incorporated as if fully set forth in the Settlement Agreement; if these Releases, set forth in Section V.A. above for Class Members and in Section V.B. for the Named Plaintiffs, are not finally approved by the Court, or the Settlement Agreement cannot become effective for any reason and the Partial Settlement set forth in this Settlement Agreement terminates as provided in

Section VIII of this Settlement Agreement, then the Releases shall terminate *nunc pro tunc* and be of no force and effect.

      E.      The Settling Defendant releases and forever discharges all claims, counter-claims, cross-claims, demands, rights, and liabilities against the Named Plaintiffs, their counsel, heirs, administrators, representatives, executors, successors, and assigns and/or against Class Members' in relation to their effort to seek work at GSB through PSG or work performed at GSB, known or unknown, asserted or unasserted, which the Settling Defendant has or may have against the Named Plaintiffs or Class Members as of the date of execution of this Settlement Agreement.

      F.      This Settlement Agreement constitutes a good faith settlement pursuant to Section 2(c) of the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2(c). An essential and material term of this Settlement Agreement is the entry of an Order barring any third-party claims for contribution and/or indemnity against Defendant PSG upon the Court's final approval of the settlement. If such a bar order is not entered as part of the Court's final approval of the settlement, then this Settlement Agreement shall be null and void.

## VI.    MONETARY RELIEF

      A.      <u>Settlement Fund</u>.

1.      Settling Defendant PSG shall pay by wire transfer or otherwise transmit to the Qualified Settlement Fund established by the Claims Administrator the Settlement Amount of Six Hundred Sixty-Five Thousand and 00/100 Dollars ($665,000.00) in accordance with the following payment schedule: (1) no later than February 1, 2023, PSG shall pay the Class Settlement Fund amount of $365,000.00 to the Qualified Settlement Fund; and (2) no later than June 15, 2023, PSG shall pay $300,000 to the Qualified Settlement Fund, the amount sought by Class Counsel as payment for attorneys' fees, litigation expenses, and costs, subject to the Court's approval.. As

consideration for the installment payments, PSG grants a junior lien to Plaintiffs to secure the above obligations. PSG shall make these payments to satisfy the claims of the Named Plaintiffs and Class Members released in this Settlement Agreement, as well as for other purposes identified in this Settlement Agreement. The Settlement Amount shall constitute the total monetary outlay by the Settling Defendant and its insurers with respect to: (a) the resolution of this matter; (b) this Settlement Agreement (and attachments); and (c) the dismissal of this Action against the Settling Defendant. The amount which the Settling Defendant and its insurers are responsible for paying shall be the Settling Defendant's only payment obligation under this Settlement Agreement.

2.          The Claims Administrator shall hold the Settlement Amount in trust until the Effective Date.

3.          Once the Court approves this Settlement Agreement, the Named Plaintiffs will formulate an appropriate plan for distribution of the Class Settlement Fund to the Class Members, which will be subject to approval by the Court.  However, it is understood and agreed by the Parties that:

          a.          The Class Settlement Fund as defined in Section III.A.12 will be distributed through a claims-made process based on the formulas described below; and

          b.          Each Class Member who files a Valid Claim shall receive a share of the payment of the Net Settlement Fund (Net Settlement Fund ÷ Total Valid Claims) up to a maximum of Five Thousand and 00/100 Dollars ($5,000.00), based on the following formula:

                    i.     *Back Pay Award*: Each Class Member who files a complete and timely Claim Form shall receive a back pay award in the amount of the "Average Wage of PSG Laborer Assigned to GSB" (as defined in paragraph 2 of this Agreement) less the actual amount

23

of any wages earned by that Class Member through an assignment from PSG during the Class Period. Claimant's Back Pay Award will be considered wages and will be reported as such on an IRS Form W-2.

In the event that the total claims for back pay are greater than the total Class Settlement Fund, the amount of each Back Pay Award shall be reduced on a *pro rata* basis.

ii. *Compensatory Damages Award*: In the event the Class Settlement Fund is greater than the total claims for back pay, the balance of the Class Settlement Fund shall be distributed to each Final Class Member who files a complete and timely Claim Form on a *pro rata* basis, in proportion to the amount of the Back Pay Award received, as a Compensatory Damages Award. Claimant's Compensatory Damages Award will be considered compensatory damages and will be reported as such on an IRS Form 1099 where mandated by the Internal Revenue Service.

c. Appropriate withholding of federal, state, and local income taxes and the Claimants' share of Federal Insurance Contribution Act ("FICA") taxes shall be deducted from the portion of the Settlement Payments considered to be wages and reported on the above-referenced Form W-2.

d. Other than the withholding and reporting requirements herein, each Claimant shall be solely responsible for the reporting and payment of

24

their share of any federal, state, and/or local income or other taxes on payments received pursuant to this Settlement Agreement.

e.  All Settlement Awards shall be made by check with "Void after 90 Days" printed on the check and any Settlement Awards not negotiated within ninety (90) days shall become void.

f.  Any unclaimed funds in the Net Settlement Fund (other than unnegotiated checks as described in subsection (g) below) shall become a part of the Remainder Fund. Within sixty (60) days following the Effective Date, the Claims Administrator shall issue a payment to a *cy pres* recipient with a designation as a tax-exempt organization under Section 501(c)(3) of the U.S. Tax Code as selected by counsel for Plaintiffs and approved by the Court.

g.  Within ninety (90) days after unnegotiated Settlement Payment checks become void, the Settlement Administrator shall remit the amounts of the unclaimed Settlement Payments to the Office of Illinois Treasurer – Unclaimed Property Division and shall follow the procedures set forth by the Illinois Treasurer to associate the unclaimed amounts with the Claimant to whom the check was issued.

B.  <u>Administration of Settlement Fund.</u>

The Settlement Fund will be placed in an account titled in the name of the PSG Settlement Fund, a Qualified Settlement Fund, intended by the Parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.* At the time the Claims Administrator is directed by Order of the Court

to distribute the PSG Settlement Fund, the Claims Administrator shall: (1) calculate, withhold, remit, and report the employer and each Claimant's share of applicable payroll taxes in connection with the Settlement Payment; (2) satisfy all tax reporting, return, and filing requirements with respect to the Settlement Account and interest or other income earned by the Settlement Account as detailed in Section VI.E. below; and (3) satisfy out of the Settlement Account all taxes (including estimated taxes, interest, or penalties) with respect to the interest or other income earned by the Settlement Account, fees, expenses, and costs incurred in connection with the opening and administration of the Settlement Agreement as Administrative Costs. The Parties and the Claims Administrator shall elect to treat the Settlement Account as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 C.F.R. § 1.468B-1(j)(2)(i), and such election statement shall be attached to the appropriate returns as required by 26 C.F.R. § 1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Claims Administrator and one another as necessary to effectuate the terms of this Settlement Agreement.

        C.    <u>Claims Procedure</u>.

1.        <u>Claims Filing Procedures for Obtaining Monetary Relief</u>. All Class Members, including the Named Plaintiffs, may be eligible to receive a Monetary Award from the Settlement Fund. All Class Members, excluding the Named Plaintiffs, who seek to claim a Monetary Award from the Settlement Fund must do so in writing by signing and submitting to the Claims Administrator a Claim Form, as described more fully below, which must be postmarked by the date set by the Court. Named Plaintiffs are deemed to have filed a Valid Claim Form. Class Members shall complete the Claim Form in its entirety to the extent applicable and in accordance with the procedures and requirements set forth on the Claim Form. Class Members who file a

Claim Form must notify the Claims Administrator of any change of address. A failure to notify the Claims Administrator of a change of address may result in the forfeiture of an Award.

The Claim Form shall be mailed to Class Members by the Claims Administrator following Preliminary Approval of the Settlement.

2.        Claim Form and Monetary Award Options. Class Members, excluding the Named Plaintiff, who seek to claim a Monetary Award must submit a Claim Form. Any Class Member who fails to timely file a Claim Form shall not receive a Monetary Award. The Named Plaintiffs shall be deemed to have filed a valid and timely claim.

D.        Non-Admissibility of Fact of Award. Except to the extent that it would constitute a set-off in an action for damages claimed for any period covered by this Settlement Agreement, neither the fact nor the amount of an Award from the Settlement Fund shall be admissible in any other proceeding for any purpose other than to enforce the Class Member Release or Named Plaintiffs' Release. Nor shall it be deemed to be a finding as to the merits of any claim.

E.        Payment of Federal, State, and Local Taxes. The Parties recognize that the awards to eligible Claimants will be subject to applicable tax withholding and reporting, which will be handled as follows:

1.        The Claims Administrator shall serve as trustee of the portion of the Settlement Fund devoted to paying claims ("Claims Fund") and shall act as a fiduciary with respect to the handling, management, and distribution of the claims, including the handling of tax-related issues and payments. Specifically, the Claims Administrator shall be responsible for withholding, remitting, and reporting of the employer and the Claimants' share of payroll taxes from the Settlement Fund.

2.        The Claims Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities and shall indemnify the

Settling Defendant for any and all penalties and interest relating to such tax payments, including those arising out of an incorrect calculation and/or late payment of the correct taxes.

3.        The Claims Administrator shall be responsible for satisfying from the Claims Fund any and all federal, state and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, Medicare, and any state employment taxes.

4.        The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs and expenses subject to reporting), and any and all taxes, penalties, and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

5.        All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on the Settling Defendants with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs, and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Settlement Fund. The Parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

6.      Other than the withholding and reporting requirements set forth in Section VI.E.2.-3., Claimants shall be solely responsible for the reporting and payment of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Settlement Agreement. The Settling Defendant makes no representations, and it is understood and agreed that the Settling Defendant has made no representations, as to the taxability of any portions of the settlement payments to any Claimants, the payment of any cost or an award of attorney fees, or any payments to the Named Plaintiffs.

F.      <u>Settling Defendant Has No Further Obligation, Liability or Responsibility</u>. The Settling Defendant shall have no withholding, reporting, or any other tax reporting or payment responsibilities with regard to the Settlement Fund or its distribution to Class Members. Moreover, the Settling Defendant shall have no liability, obligation, or responsibility for the administration of the Settlement Fund, the determination of any formulas for disbursement, or the disbursement of any monies from the Settlement Fund except for (1) the obligation to pay the $665,000.00 into the Settlement Fund as described in Section VI.A.1., above; and (2) the agreement to cooperate in providing information necessary for Settlement administration set forth herein.

## VII.   <u>ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL AND SERVICE AWARD TO THE NAMED PLAINTIFF</u>

A.      All of Plaintiffs' Counsel's fees and costs, including those in connection with securing Court approval of this Settlement Agreement, the claims process, and any monitoring of this Settlement Agreement, shall be paid from the Qualified Settlement Fund, following approval of those attorneys' fees and costs by the Court. Plaintiffs' Counsel will seek attorneys' fees and costs from the Settlement Amount under this Settlement Agreement in an amount not to exceed Three Hundred Thousand and 00/100 Dollars ($300,000.00) from the Settlement Amount, subject to Court approval. The Settling Defendant shall not object to Plaintiffs' Counsel's requests for fees

and costs up to the amounts stated herein. Any funds from the Settlement Amount not approved by the Court for the payment of Plaintiffs Counsel's attorneys' fees and costs, after deductions for the costs of claims administration and service award payments to the Named Plaintiffs, shall become part of the Net Settlement Fund. Under no circumstances will the award of fees to Class Counsel representing the Named Plaintiffs and Class Members cause PSG's or its insurers' financial obligation under this Settlement Agreement to increase beyond the Settlement Amount.

B.       The Named Plaintiffs have exerted time and effort in assisting Plaintiffs' Counsel and serving as fiduciaries for the Class. The parties agree that Class Counsel may petition the Court for a Service Award to the Named Plaintiffs for their efforts and service to the Class. The Settling Defendant shall not object to the Named Plaintiffs' motion for a Ten Thousand Dollar ($10,000.00) Service Award to each of the Named Plaintiffs, or a total of Twenty Thousand Dollars ($20,000.00) to both of the Named Plaintiffs from the Settlement Amount under this Settlement Agreement.

## VIII.   TERMINATION OF SETTLEMENT

A.       In the event that the Court does not approve this Settlement Agreement in its entirety, excluding modifications that the Settling Defendant determines in its reasonable and good faith judgment not to be material modifications, or in the event that the Settlement Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, no payments shall be made by the Settling Defendant to anyone in accordance with the terms of this Settlement Agreement, and the Parties will each bear their own costs and fees with regard to the efforts to obtain Court approval. In such event, this Settlement Agreement (except for this provision and those provisions relating to non-admissibility and non-admission of liability set forth in Sections II.C.; II.H.; IV.F.5; and VI.D.) shall be deemed null and void, its terms and provisions

shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose. In such event, the Settling Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Named Plaintiffs in the Action upon all procedural and substantive grounds, including the ability to assert any and all other potential defenses or privileges on any grounds and to appeal the Court's class certification of this matter. The Named Plaintiffs and Class Counsel agree that the Settling Defendant retains and reserves these rights and agree not to take a position to the contrary. The Named Plaintiffs and Class Counsel do not waive, but rather expressly reserve, all rights to assert any claims and allegations and to challenge any and all defenses thereto, upon all procedural and substantive grounds, and to seek class action treatment of any and all of their claims. The Settling Defendant agrees that the Named Plaintiffs and Class Counsel retain and reserve these rights and agrees not to take a position to the contrary. Notwithstanding any other provision of this Settlement Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, denying fees or reducing the amount of any attorneys' fees or costs to be paid to Class Counsel and/or Plaintiffs' Counsel, or reducing the amount of the Service Award to be paid to the Named Plaintiff, shall constitute grounds for cancellation or termination of this Settlement Agreement or grounds for limiting any other provision of the Judgment.

IX. **CONFIDENTIALITY**

      A.   <u>Confidentiality of Settlement Negotiations</u>. Other than necessary disclosures made to the Court or as mutually agreed to by the Parties, the content of the Parties' settlement negotiations and any documents produced in connection therewith or in connection with this Settlement Agreement shall be held confidential by the Settling Parties and their respective counsel.

## X.  MISCELLANEOUS PROVISIONS

A.  <u>Governing Law</u>. The Parties agree that federal law shall govern the validity, construction, and enforcement of this Settlement Agreement. To the extent that it is determined that the validity, construction, or enforcement of this Settlement Agreement, or the Release thereunder pursuant to its terms, is governed by state law, the substantive law of Illinois shall apply.

B.  <u>Entire Agreement</u>. This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the Settling Parties with respect to this Settlement Agreement. This Settlement Agreement does not impose any obligations on the Settling Parties beyond the terms and conditions stated herein. Accordingly, this Settlement Agreement shall not prevent or preclude the Settling Defendant from revising its employment practices and policies or taking other personnel actions during the term of this Settlement Agreement so long as such actions would not violate the terms of this Settlement Agreement.

C.  <u>Modifications</u>. Except as specifically provided for herein, this Settlement Agreement may not be amended or modified, except with the Parties' express written consent.

D.  <u>Exhibits</u>. The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

E.  <u>Notices to Counsel</u>. All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and by overnight mail and e-mail to counsel for the respective Parties (specifically for Plaintiffs, to Joseph Sellers and Harini Srinivasan of Cohen Milstein Sellers & Toll, PLLC, Christopher Wilmes and Caryn Lederer of Hughes Socol Piers Resnick & Dym, LTD and Christopher Williams of the National Legal Advocacy Network) at

their respective addresses set forth below (or at such other address as any such party or counsel may designate in a subsequent notice).

F.   <u>Failure to Insist on Strict Compliance</u>. The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

G.   <u>Settlement Agreement Binding</u>. This Settlement Agreement shall inure to the benefit of, and be binding upon, the Parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors, and assigns provided, however, that this Settlement Agreement shall not inure to the benefit of any third party.

H.   <u>Dispute Resolution Mechanisms</u>. The Settling Parties will work diligently and in good faith to resolve all disputes that may arise between them concerning the rights, obligations, and duties of the parties to this Settlement Agreement. In the event that the Settling Parties cannot agree, the Settling Parties will attempt to resolve the dispute with the facilitation of a mediator. In the event that mediation is unsuccessful, then either party may institute an enforcement action. Class Members will have no individual right to enforce the terms of this Settlement Agreement. Rather, only the Settling Defendant and the Named Plaintiffs, through Class Counsel, may seek to enforce the terms of this Settlement Agreement. In any action brought to enforce this Settlement Agreement, the Court may, in its discretion, award reasonable attorneys' fees and expenses to the prevailing party.

I.   <u>No Drafting Presumption</u>. All Parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

J. **Dispute as to Meaning of Agreement Terms**. In the event of any dispute or disagreement with respect to the meaning, effect, or interpretation of this Settlement Agreement or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the Settling Parties agree that such dispute will be resolved and adjudicated only in accordance with the dispute resolution provisions of Section X.H of this Settlement Agreement.

K. **Interpretation of Terms**. Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

L. **Paragraph and Section Headings**. Paragraph and section headings are for convenience of reference only and are not intended to create substantive rights or obligations.

M. **Counterparts**. This Settlement Agreement may be executed in counterparts. Each signed counterpart together with the others shall constitute the full Settlement Agreement.

N. **Agreement Binding**. As of the date on which counsel for the Settling Parties execute this Settlement Agreement, this Settlement Agreement shall be binding in all respects, subject to the terms and conditions set forth herein.

O. **Parties' Authority**. The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and to bind the Parties to the terms and conditions hereof. All of the Parties acknowledge that through this Settlement Agreement and its attachments, they and the Class Members are being advised that they may consult an attorney regarding their participation in this Settlement Agreement, and the Parties acknowledge that they in fact have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Settlement Agreement, and this Settlement Agreement is made with the consent and advice of counsel who have jointly prepared this Settlement Agreement.

**Counsel for Plaintiffs and the Class**

DATED: **11/9/2022**          COHEN MILSTEIN SELLERS & TOLL, PLLC

By: _____
     Joseph Sellers

     *Attorney for Plaintiffs and Class Counsel*

DATED: 11/9/2022 | 9:21 AM PST          HUGHES SOCOL PIERS RESNICK & DYM, LTD.

By: _____
     Christopher Wilmes

     *Attorney for Plaintiffs and Class Counsel*

**Counsel for Plaintiffs**

DATED: 11/9/2022 | 1:23 PM EST          NATIONAL LEGAL ADVOCACY NETWORK

By: _____
     Christopher J. Williams

     *Attorney for Plaintiffs*

35

**Defendant Personnel Staffing Group, LLC a/k/a PSG OLDCO, LLC**

DATED: ___11/9/2022_____          PERSONNEL STAFFING GROUP, LLC

By: _____

Its: ___CEO_____

**Defendant Personnel Staffing Group, LLC a/k/a PSG OLDCO, LLC's Counsel**

DATED: ___11/9/2022_____

By: _____

*Attorney for Defendant*
*Personnel Staffing Group, LLC a/k/a*
*PSG OLDCO, LLC*

## EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

*Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.,* **Case No. 13-cv-01524**
*Eagle, et al. v. Vee Pak, Inc., et al.,* **Case No. 12-cv-09672**

## IMPORTANT NOTICE

You are receiving this Claim Form because you may be eligible to receive some alleged damages due to the denial of job assignments as part of settlements in two class action cases. If you are African American and sought work assignments through MVP during the period of January 1, 2011 up through and including October 21, 2013 or during the period of February 27, 2011, up through and including December 31, 2014, but on one or more occasion were not assigned to work at Gold Standard Baking and/or Vee Pak, complete the form below.

**Questions? Please call xxx-xxx-xxxx or visit the Settlement website,** www.MVP_Settlement.com

## CLAIM AND RELEASE FORM

If your name or address is different from those shown below, print the corrections on the lines to the right.

Name/Address Changes (if any):

<<NAME>>
<<ADDRESS>>
<<CITY>>,<<ST>><<ZIP>>
( _____ ) _____- _____

_____
_____
_____
( _____ ) _____- _____

___
Area Code    Daytime Telephone Number                Area Code        Evening Telephone Number

**YOU MUST COMPLETE THIS FORM IN ORDER TO BE ELIGIBLE FOR A MONETARY RECOVERY. INCOMPLETE OR UNTIMELY CLAIM FORMS WILL BE REJECTED. YOU MUST <u>SIGN</u> AND <u>MAIL</u> THE CLAIM FORM IN THE SELF ADDRESSED POSTAGE PRE-PAID ENVELOPE INCLUDED, OR MAIL IT TO THE ADDRESS BELOW NO LATER THAN [INSERT CLAIM DEADLINE]:**

**MVP/Gold Standard Baking Class Claims Administrator
[insert claims administrator name and address]
Telephone #, Fax #, email address**

**INSTRUCTIONS:**
You must ***complete, sign and return*** this Claim Form in order to be eligible for a monetary recovery. Your Claim Form must be postmarked on or before [insert claim deadline]. If you move, it is your responsibility to update your contact information with the Claims Administrator at the address listed above.

Returning this Claim Form does not ensure that you will share in the Settlement Proceeds. You will share in the proceeds only if (1) the Court approves the Settlements and (2) you meet requirements for recovery set forth in the three Settlement Agreements, which are summarized in the accompanying Notice. You must respond to the below questions under penalty of perjury.

i

## PART I: QUESTIONNAIRE

Be advised – this agreement is only for African Americans who allege they were denied an assignment from MVP's Cicero Office. In order to recover a settlement payment, you must respond to the following questions under oath. **Do not complete this claim form if you are not African American.**

Tenga en cuenta - este acuerdo es solo para los Afroamericanos que alegan que se les negó una asignación de la oficina de MVP. Para recuperar un pago de liquidación, debe responder a la siguiente pregunta a continuación bajo juramento. **No complete este formulario de reclamo si no es Afroamericano.**

1.      Are you African American?      Yes      No

2.      Did you seek work from a staffing agency known as MVP through MVP's Cicero Office located at 5637 W Roosevelt Rd, Cicero, IL 60804 during either of the settlement class periods listed below? Please check either "Yes" or "No" for both parts, "a" and "b," below.

> a) Did you seek work from MVP's Cicero Office from February 27, 2011 through December 31, 2014?
>
>     Yes      No
>
> b) Did you seek work from MVP's Cicero Office from January 1, 2011 through October 21, 2013?
>
>     Yes      No

## PART II: WAIVER AND RELEASE

I, the undersigned, hereby irrevocably and unconditionally waive, release, and forever discharge Gold Standard Baking, Inc. and each of its current, former, and future affiliates, including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, employee benefit plans (and their agents, administrators, fiduciaries, insurers and reinsurers), principals, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and representative capacities (collectively referred to as the "Releasees") from any and all race discrimination claims against the Releasees and that arise out of the same transactions or occurrences alleged in Plaintiffs' Sixth Amended Complaint ("Released Claims"). I also hereby irrevocably and unconditionally waive, release, and forever discharge Personnel Staffing Group, LLC a/ka PSG OLDCO, LLC  d/b/a MVP and each of its current, former, and future affiliates, including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, employee benefit plans (and their agents, administrators, fiduciaries, insurers and reinsurers), principals, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and representative capacities (collectively referred to as the "Releasees") from any and all race discrimination claims against the Releasees and that arise out of the same transactions or occurrences alleged in Plaintiffs' Sixth Amended Complaint ("Released Claims") in the matters of *Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.* (Case No. 15-cv-01524 (N.D. Ill. 2013) and *Eagle, et al. v. Vee Pak, Inc., et al.*, (Case No. 12-cv-09672 (N.D. Ill. 2012)). I acknowledge and agree that the scope of release for Gold Standard Baking, Inc.'s and Personnel Staffing Group, LLC's Releasees shall be the same as permitted under the doctrine of *res judicata* had a judgment been entered in Gold Standard Baking, Inc.'s and Personnel Staffing Group, LLC's favor; provided, however, that the Released Claims do not include and explicitly exclude any and all claims against Vee Pak, Inc., Vee Pak, LLC and Staffing Network Holdings, LLC raised in the matter of *Eagle, et al. v. Vee Pak, Inc., et al.*, (Case No. 12-cv-09672 (N.D. Ill. 2012)). I also acknowledge and

agree that explicitly not released and excluded from this settlement are any claims related to any conduct or omissions occurring after December 31, 2014 and that this Waiver and Release explicitly does not waive any rights that cannot be waived by law, including my right to file a charge of discrimination with an administrative agency, such as the United States Equal Employment Opportunity Commission ("EEOC") and my right to participate in any agency investigation or proceeding. I understand, however, that I am waiving any right to recover a monetary award from any of the Releasees in connection with such a charge or investigation related to the Released Claims for a charge filed by me or by any other individual, by the EEOC, or by any other city, local, state, or federal agency.

ACCORDINGLY, I declare under penalty of perjury that the answers to the questions in this Claim and Release Form are true and correct.

Date: _____   Signature: _____

**EXHIBIT B [Abridged Notice]**
**NOTICE OF CLASS ACTION SETTLEMENTS**
*Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.*, Case No. 13-cv-01524 ("*GSB* **Matter**")
*Eagle, et al. v. Vee Pak, Inc., et al.*, Case No. 12-cv-09672 ("*Vee Pak* **Matter**")

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**          **c/o Claims Administrator**
**EASTERN DIVISION**

## WHY YOU ARE RECEIVING THIS NOTICE

This Notice is to tell you about the settlement of a class action lawsuit that was filed against Gold Standard Baking, Inc. ("GSB"), and Personnel Staffing Group, LLC a/k/a PSG OLDCO, LLC d/b/a MVP ("MVP") (the "*GSB* Matter") and the partial settlement of a class action lawsuit that was filed against Vee Pak, Inc. and MVP (the "*Vee Pak* Matter"). This Notice also tells you about a "Fairness Hearing" in the *GSB* Matter to be held before Judge Sara L. Ellis on ___ at ___.m. [insert location] and a "Fairness Hearing" in the *Vee Pak* Matter to be held before Judge John J. Tharp, Jr. on ___ at ___.m. [insert location]. These Fairness Hearings will be used to determine whether the proposed settlements described in the Class Action Settlement Agreements (the "Agreements") fairly resolve the claims against GSB and MVP (the "Settling Defendants") in the *GSB* Matter, and against MVP in the *Vee Pak* Matter. You may be entitled to a monetary award as described in this notice.

This Notice **is not** a notice of a lawsuit **against** you. A Federal Court has authorized this Notice.

**You received this Notice because you may be a member of the Class in the *GSB* Matter and/or the *Vee Pak* Matter:**

**The Class in the *GSB* Matter is defined as:**

African American laborers who sought work assignments through MVP to work at GSB, but on one or more occasion were not assigned to work at GSB when a position was available during the period of February 27, 2011, up through and including December 31, 2014.

**The MVP Subclass in the *Vee Pak* Matter is defined as:**

African American laborers who sought work assignments through MVP to work at Vee Pak, but on one or more occasion were not assigned to work at Vee Pak when a position was available during the period of January 1, 2011, up through and including October 21, 2013.

## SETTLEMENTS IN THESE MATTERS AND INFORMATION ON HOW TO PARTICIPATE

You may be eligible to participate in the settlement of the *GSB* Matter and in the partial settlement of the *Vee Pak* Matter (with MVP only) by completing the attached Claim Form and timely mailing it to the Settlement Administrator. To receive your share of the Settlement Fund, you **must** mail the attached Claim and Release Form not later than [Insert Date]. The Claim and Release must be completed, signed and returned without alteration or amendment.

To be a class member in the *GSB* Matter and eligible for a settlement award under the settlement of the *GSB* Matter, you must answer "Yes" to questions 1 (affirming under oath that you identify as African American) and 2(a) (affirming under oath that you sought work at MVP during the GSB Class Period) on the enclosed claim form.

To be a class member in the *Vee Pak* Matter and eligible for a settlement award under the settlement with PSG in the *Vee Pak* Matter, you must answer "Yes" to questions 1 (affirming under oath that you identify as African American) and 2(b) (affirming under oath that you sought work at MVP during the Vee Pak Class Period) on the enclosed claim form.

For example,

- If you sought work from this MVP office between January 1, 2011 and February 26, 2011, but not after that, and did not reject assignments to Vee Pak, you would answer "No" to question 2(a) but "Yes" to question 2(b).
- If you sought work from this MVP office between October 22, 2013 and December 31, 2014, but not before that, and did not reject assignments to GSB, you would answer "Yes" to question 2(a) but "No" to question 2(b).
- If you sought work from this MVP office between February 27, 2011 and October 22, 2013, and did not reject assignments to Vee Pak or GSB, you would answer "Yes" to both questions 2(a) and 2(b).

If you are uncertain how to respond to the questions, please contact the claims administrator at:

### ***Claims Administrator***

Settlement Services, Inc.
Telephone:
Email:
Address:

**Settlement Awards in the settlement of the *GSB* Matter:** If you respond in the affirmative under oath to questions 1 and 2(a) on the enclosed Claim Form, you are a Class Member in the *GSB* Matter. If you are a Class Member in the *GSB* Matter and you accurately complete and timely submit the enclosed Claim Form, then you may be entitled to receive a Settlement Payment from the Class Action Settlements with GSB and MVP in the *GSB* Matter. Each Claimant in the settlement of the *GSB* Matter may receive a share of the GSB and MVP Class Settlement Fund of One Million and Forty Thousand and 00/100 ($1,040,000.00), minus the cost of claims administration, service awards to the Named Plaintiffs as awarded by the court and the employer's share of payroll taxes, provided, however, that the award to each Claimant shall be no more than Five Thousand Dollars ($5,000.00). The actual amount each Claimant will receive will depend upon how many claims are filed and whether your wages earned from MVP exceed the average wages earned by non-African Americans assigned to GSB during this same time.

**Settlement with MVP in the *Vee Pak* Matter:** If you respond in the affirmative under oath to questions 1 and 2(b) on the attached Claim Form, you are a Subclass Member in the *Vee Pak* Matter. If you accurately complete and timely submit the Claim Form, you may be entitled to a share of any settlement or resolution of the *Vee Pak* Matter with regards to assignments made from MVP to Vee Pak. In addition, as part of the partial settlement of the *Vee Pak* Matter, MVP has agreed to contribute One Hundred and Thirty-Five Thousand and 00/100 ($135,000.00) toward the ultimate resolution of the *Vee Pak* Matter. However, as the case continues against Vee Pak, the Court has authorized the settlement funds, less the cost of claims administration and service awards to the Named Plaintiffs as awarded by the court, to be held in trust, and no settlement money will be paid out until the end of the case or until the Court so directs.

**If the information on the claim form is accurate,** fill out the claim form completely, *making sure to answer the questions and sign and date the form* and mail it in the postage-paid envelope included.

## HOW ARE THE LAWYERS FOR THE SETTLEMENT CLASS PAID?

Multiple law firms have worked on these two lawsuits for more than 10 years and have incurred well over $500,000 in case expenses, including hiring experts to help prove this case, and have expended more than $3,000,000 in attorneys' fees. In the *GSB* Matter, the parties negotiated payment of attorneys' fees and costs separately from the amount available to pay claims of class members and have agreed that Class Counsel may petition the Court for reimbursement of some of the attorneys' fees and costs incurred over the last decade in this case in the amount of One Million, Three Hundred and Twenty-Five Thousand and 00/100 Dollars ($1,325,000.00). In the *Vee Pak* Matter, Plaintiffs' attorneys will not seek reimbursement of their attorneys' fees or costs incurred at this time and the entire settlement amount will be held in trust.

## HOW TO OPT-OUT OF OR OBJECT TO EITHER OR BOTH SETTLEMENTS

If you do not wish to participate in the settlement of the *GSB* Matter or the *Vee Pak* Matter or both, you may opt out. If you opt out of a settlement, you will not be eligible to receive any benefit from such settlement.

**If you do not wish to participate in the settlement of the *GSB* Matter, you may exclude yourself from the settlement ("Opt-Out Request").** To exclude yourself you must submit the following written statement on your Opt-Out Request: "I request to be excluded from the settlement in *Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.*, Case No. 13-cv-01524."

**Parties Opting Out of GSB Matter are Subject to Gold Standard Baking, LLC Bankruptcy Proceeding.** On June 22, 2022, Gold Standard Baking, LLC, successor in interest to Gold Standard Baking, Inc., and its debtor affiliates each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 in the United States Bankruptcy Court for the District of Delaware, pending under case number 22-10559 (JKS). Information regarding the bankruptcy proceedings may be obtained by (i) visiting the website of the Debtors' notice and claims agent, Agent Solutions

("Omni") at: https://omniagcntsolutions.com/GoldStandard; (ii) calling Omni at: (866) 989-6144 (toll-free; US & Canada) or (8 18) 574-6886 (international); or (iii) inquiring by email at GoldStandardinguirics@omniagnt.com.

**If you do not wish to participate in the settlement of the *Vee Pak* Matter, you may exclude yourself from the settlement ("Opt-Out Request").** To exclude yourself you must submit the following written statement on your Opt-Out Request: "I request to be excluded from the MVP settlement in *Eagle, et al. v. Vee Pak, Inc., et al.*, Case No. 12-cv-09672."

Your Opt-Out Request must include your full name, address and telephone number and must be personally signed by you and returned to the Claims Administrator and postmarked on or before [Opt-Out Deadline]. If you exclude yourself from the settlement, you will not be eligible to receive a settlement award. You will also not be bound by any release and may pursue other legal remedies on your own apart from the settlement that may be available to you. Neither the Parties nor their attorneys make any representations to you regarding what, if any, legal remedies are available to you should you choose to opt-out. In addition, a decision to opt-out of the settlement of the *Vee Pak* Matter will not impact your rights against the Non-Settling Defendants, Vee Pak and Staffing Network, which are not part of this settlement.

**You may also object to the terms of the settlement.** If you choose to object to the settlement of the *GSB* Matter or the *Vee Pak* Matter, you must mail your written objection to the Claims Administrator with copies to Class Counsel and the Settling Defendant's counsel on or before [Objection Deadline]. If you choose to object to either or both settlements, you must also include your full name, address, and telephone number, and you must personally sign and date the letter.

Full details on how to exclude yourself or object to the settlement are available in the Complete Notice available at www.MVP_Settlement.com. Please review the complete notice prior to excluding yourself from the settlement or objecting to the terms of the settlement.

If you have questions about the settlement, contact Class Counsel at:

[insert class counsel contact information]

**FILE THE ATTACHED CLAIM FORM WITH A POSTMARK NO LATER THAN [INSERT DATE].**

<u>**EXHIBIT C**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

*Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.*, Case No. 13-cv-01524 ("*GSB* Matter")
*Eagle, et al. v. Vee Pak, Inc., et al.*, Case No. 12-cv-09672 ("*Vee Pak* Matter")

**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND
FAIRNESS HEARING**

**If you are African American and sought a work assignment at MVP at its Cicero, Illinois
office located at 5637 W Roosevelt Rd, Cicero, IL 60804 between January 1, 2011 through
October 21, 2013 or between February 27, 2011 through December 31, 2014, but on one or
more occasion were not assigned to work at Gold Standard Baking and/or Vee Pak, the
settlement of a class action lawsuit and the partial settlement of another class action lawsuit
may affect you.**

*A federal court has authorized this Notice.  This is not a solicitation from a lawyer.
You are not being sued.*

**Part 1: Basic Information**

| **What is this Notice About?** |
| --- |

**What is this Notice about?**

     This Notice is to tell you about the Settlement of a "class action" lawsuit that was filed
against Gold Standard Baking, Inc. ("GSB") and Personnel Staffing Group, LLC d/b/a MVP
("MVP") in the *GSB* Matter and to tell you about a "Fairness Hearing" before Judge Sara L. Ellis
on _____ at ____.m. at [insert location], to determine whether the proposed settlement described in
the Partial Class Action Settlement Agreement of the *GSB* Matter (the "*GSB* Agreement") fairly
resolves the claims against Defendants GSB and MVP, as explained below.

     This Notice is also to tell you about the partial Settlement of a second "class action" with
MVP only in the *Vee Pak* Matter and to tell you about a "Fairness Hearing" before Judge John J.
Tharp, Jr. on _____ at ____.m. at [insert location], to determine whether the proposed partial
settlement described in the Partial Class Action Settlement Agreement (the "Partial *Vee Pak*
Agreement") fairly resolves the claims against MVP as explained below. Two other Defendants
in the *Vee Pak* Matter, Vee Pak and Staffing Network ("Non-Settling Defendants"), are not
participating in this Settlement and the litigation will proceed against them. You may be entitled
to an additional monetary award at a later date if money is recovered through settlement or trial
against the Non-Settling Defendants.

**Why did I get this Notice?**

     You received this Notice because you received an assignment from MVP from January 1,
2011, up through and including December 31, 2014 and, if you are African American, you may be a
member of the Class in the *GSB* Matter or the *Vee Pak* Matter or both.

**The Class in the *GSB* Matter is defined as:**

> African American laborers who sought work assignments through MVP to work at GSB, but on one or more occasion were not assigned to work at GSB when a position was available during the period of February 27, 2011, up through and including December 31, 2014.

**The MVP Subclass in the *Vee Pak* Matter is defined as:**

> African American laborers who sought work assignments through MVP to work at Vee Pak, but on one or more occasion were not assigned to work at Vee Pak when a position was available during the period of January 1, 2011, up through and including October 21, 2013.

If you meet this definition of one or both of these Classes, you are eligible to participate in one or both of the settlements and may be eligible for compensation as described below. If you do not wish to participate in either settlement, you may also exclude yourself or opt-out of one or both of the settlements. Information on how to exclude yourself from the settlements is available on page 5 of this Notice.

This Notice explains:

- What this litigation is about;
- Who is affected by the lawsuits;
- Who represents the Classes in the lawsuits;
- What your legal rights and options are;
- How and by when you need to act.

This Notice **is not** a notice of a lawsuit **against** you. A Federal Court has authorized this Notice.

**What is the Litigation about?**

The *GSB* Matter was filed against GSB and MVP by James Zollicoffer and Norman Green ("Plaintiffs") on behalf of themselves and other similarly situated African American laborers who sought work assignments from MVP from February 27, 2011, up through and including December 31, 2014, but who, on one or more occasions, were not assigned to work at GSB when a position was available. In this lawsuit, Plaintiffs seek to recover on their own behalf and on behalf of the Class the lost wages that they could have received if they had been assigned to work at GSB by MVP, as well as their attorney's fees and costs. The Defendants have denied all allegations of wrongdoing in this matter, and no Court has held that either GSB or MVP has violated the law. The Plaintiffs and the Defendants have reached a Settlement regarding the *GSB* Matter.

The *Vee Pak* Matter was filed against MVP by James Zollicoffer ("Plaintiff"), on behalf of himself and other similarly situated African American laborers who sought work assignments from MVP from January 1, 2011, up through and including October 21, 2013, but who, on one or more occasions, were not assigned to work at Vee Pak when a position was available. In this lawsuit, Plaintiff seeks to recover on his own behalf and on behalf of the MVP Subclass in the *Vee Pak* Matter the lost wages that they could have received if they had been assigned to work at Vee Pak

by MVP, as well as their attorney's fees and costs. MVP has denied all allegations of wrongdoing in this matter, and no Court has held that MVP has violated the law. The Plaintiffs and MVP have reached a Settlement regarding the *Vee Pak* Matter.

## Part 2: The Settlements

| What Do the Settlements Entail? |
| --- |

### What are the *GSB* Settlement and partial *Vee Pak* Settlement and how were they reached?

In the *GSB* Matter, Plaintiffs, and both Defendants GSB and MVP agreed to a Settlement in which the *GSB* Defendants have agreed to compensate Plaintiffs and other Class Members for alleged race discrimination in the assignments that MVP made to GSB. The *GSB* Defendants deny all wrongdoing, and no court has held that the *GSB* Defendants violated the law. The Plaintiffs and the *GSB* Defendants are now seeking Court approval of the settlements with GSB and MVP, which is required for the settlement to become effective. The *GSB* Settlement includes a procedure for eligible persons to receive their share of the Class Settlement Fund.

In the *Vee Pak* Matter, Plaintiff and MVP agreed to a partial Settlement in which MVP has agreed to contribute to a fund to compensate Plaintiff and other Class Members for the alleged of race discrimination in assignments that MVP made to Vee Pak. MVP denies all wrongdoing, and no court has held that the MVP violated the law. The Named Plaintiff and MVP are now seeking Court approval of the settlement with MVP, which is required for the settlement to become effective. The funds paid by MVP in this settlement, less the cost of claims administration, will be held in trust until the entire case is resolved against all Defendants or until the Court so directs.

The parties have devoted substantial amounts of time, energy, and other resources in prosecuting and in defending the *Vee Pak* and *GSB* Matters which were initially filed with the Equal Employment Opportunity Commission in 2012 and filed in Court in late 2012 and early 2013, respectively. In the course of the litigation and settlement discussions of both matters, both GSB and MVP have revealed information about their respective financial condition which has raised concerns about their ability to pay a larger amount than agreed to in these settlements. Unless there is a settlement, the lawsuit will continue against GSB and MVP in the *GSB* Matter and against MVP in the *Vee Pak* Matter and there would be no guarantee of a greater recovery. In light of these factors, the Settling Parties believe that these settlements are the best way to fully resolve the *GSB* Matter and partially resolve the *Vee Pak* Matter while minimizing further expenditures, delay and risk.

The Parties and their attorneys believe that the settlements are fair, reasonable, and adequate, and in the best interests of all of the Settling Parties, including the members of the class in the *GSB* Matter and members of the MVP Subclass in the *Vee Pak* Matter.

**What are the terms of the Settlement?**

In the *GSB* Matter, Defendants GSB and MVP have agreed to pay a combined settlement amount of Two Million Three Hundred Sixty-Five Thousand and 00/100 Dollars ($2,365,000.00), of which One Million and Forty Thousand and 00/100 ($1,040,000.00), less the cost of claims administration, the service awards to the Named Plaintiffs and the employer share of payroll taxes, will be paid to class members to resolve the claims of race discrimination brought against GSB and MVP in the *GSB* Matter (the "*GSB* Class Settlement Fund").

In the *Vee Pak* Matter, Defendant MVP has agreed to contribute One Hundred and Thirty-Five Thousand and 00/100 Dollars ($135,000.00) toward a settlement fund (the "*Vee Pak* MVP Subclass Settlement Fund"). The *Vee Pak* MVP Subclass Settlement Fund, along with any recovery from Vee Pak, will ultimately be used to pay Settlement Awards to MVP Subclass Members in the *Vee Pak* Matter, any additional cost of claims administration, the employer's share of payroll taxes and any service award to the Named Plaintiff and attorneys' fees and costs as awarded by the Court. However, as the litigation in the *Vee Pak* Matter on behalf of the MVP Subclass continues, the Court has directed that these funds, less the cost of the claims administration, be held in trust until the resolution of the entire *Vee Pak* Matter or until the Court so directs.

Class Members in the *GSB* Matter who do not exclude themselves from the *GSB* Settlement will release GSB and MVP and each of their respective current, former, and future affiliates, including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, employee benefit plans (and their agents, administrators, fiduciaries, insurers and reinsurers), principals, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and representative capacities (collectively referred to as the "Releasees") from any and all race discrimination claims against the Releasees that arise out of the same transactions or occurrences alleged in Plaintiffs' Sixth Amended Complaint in the *GSB* Matter ("*GSB* Released Claims"). MVP Subclass Members in the *Vee Pak* Matter who do not exclude themselves from the partial *Vee Pak* Settlement will release MVP and each of its respective current, former, and future affiliates, including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, employee benefit plans (and their agents, administrators, fiduciaries, insurers and reinsurers), principals, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and representative capacities (collectively referred to as the "Releasees") from any and all race discrimination claims against the Releasees that arise out of the same transactions or occurrences alleged in Plaintiffs' Sixth Amended Complaint in the *Vee Pak* Matter ("*Vee Pak* Released Claims"). The scope of release for the Settling Defendants' Releasees in both matters shall be the same as permitted under the doctrine of *res judicata* had a judgment been entered in GSB or MVP's favor; provided, however, that the *Vee Pak* Released Claims do not include and explicitly exclude any and all claims against Vee Pak, Inc., Vee Pak, LLC and Staffing Network Holdings, LLC and each of their respective current, former, and future affiliates, including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns. Also explicitly not released and excluded from the *GSB* and partial *Vee Pak* Settlements are any claims related to any conduct or omissions occurring after December 31, 2014 and the Waiver and Release explicitly does not

waive any rights that cannot be waived by law, including the right to file a charge of discrimination with an administrative agency, such as the United States Equal Employment Opportunity Commission ("EEOC") and the right to participate in any agency investigation or proceeding. However, any *GSB* Class Member who does not opt-out of the *GSB* Settlement or *Vee Pak* MVP Subclass Member who does not opt-out of the partial *Vee Pak* settlement, if approved, will waive any right to recover a monetary award from any of the Releasees in connection with such a charge or investigation related to the Released Claims for a charge filed by any individual, by the EEOC, or by any other city, local, state, or federal agency.

Under the *GSB* Settlement Agreement, each of the two Named Plaintiffs will ask the Court to award them a payment of Ten Thousand and 00/100 Dollars ($10,000.00) for executing a full release of all claims as to GSB and MVP for helping to litigate and settle the *GSB* Matter, and Plaintiffs' counsel will ask the Court to award them One Million, Three Hundred Thousand and Twenty-Five Thousand and 00/100 Dollars ($1,325,000.00) to reimburse them for expenses incurred in this litigation and for their attorneys' fees, if approved by the Court.

As discussed above, in the partial *Vee Pak* Settlement, the funds from the settlement, less the cost of the claims administration and the service award sought for the Named Plaintiff, will be held in trust and be distributed at a later time as directed by the Court. Plaintiff's counsel will not seek reimbursement of attorneys' fees and costs from this partial settlement at this time. Instead, the litigation in the *Vee Pak* Matter will continue against Vee Pak and Staffing Network.

**What am I entitled to recover under the Settlement?**

If the Court approves the *GSB* Settlement, each GSB Class Member who submits a valid and timely claim may receive a share of the combined Class Action Settlements with GSB and MVP in the GSB Matter of One Million, Three Hundred and Forty Thousand and 00/100 ($1,040,000.00), minus the cost of claims administration, service awards to the Named Plaintiffs and the employer's share of payroll taxes, as long any wages earned from MVP do not exceed the average wages earned by non-African Americans assigned to Vee Pak during this same time. The award to each Claimant shall be no more than Five Thousand Dollars ($5,000.00). The actual amount each Claimant in the *GSB* Settlement will receive will depend upon how many claims are filed. If more claims are received than funds available, each claimant's settlement award will be reduced proportionately. If the total amount of all claims is less than the total funds available, each eligible Claimant's settlement payment will be increased proportionately.

The Parties have agreed that each Claimant's Back Pay Award in the *GSB* Matter will be considered wages and will be reported as such on an IRS Form W-2 and that the Claimant's Compensatory Damages Award will be considered statutory damages and will be reported as such on an IRS Form 1099 where mandated by the Internal Revenue Service. Appropriate withholding of federal, state, and local income taxes, and the Claimants' share of Federal Insurance Contributions Act (FICA) taxes shall be deducted from these settlement

payments and reported in the above referenced Form W-2. Other than the withholding and reporting requirements herein, Claimants shall be solely responsible for the reporting and payment of their share of any federal, state, or local income or other taxes on payments received pursuant to this settlement.

If the Court approves the partial *Vee Pak* Settlement with MVP, each *Vee Pak* MVP Subclass Member may receive a share of the partial *Vee Pak* MVP Subclass Settlement Fund of One Hundred Thousand and 00/100 ($100,000.00), minus the cost of claims administration, service awards to the Named Plaintiffs and the employer's share of payroll taxes.

| **How do I participate?** |
| --- |

### How do I receive a Settlement Award in the *GSB* Settlement?

To receive a part of the *GSB* Class Settlement Fund, you must be a class member in the *GSB* Matter by answering, under oath, "Yes" to Claim Form Questions 1 (affirming under oath that you identify as African American) and 2(a) (affirming under oath that you sought work at MVP during the *GSB* Class Period).

### How can I be eligible to receive a part of the partial Settlement with MVP in the *Vee Pak* Matter at a later time?

As explained above, there will be no payments made from the partial *Vee Pak* MVP Subclass Settlement Fund at this time. However, to be eligible to receive a part of the *Vee Pak* MVP Subclass Settlement Fund at the time the Court directs this Fund to be distributed, you must be a class member in the *Vee Pak* Matter by answering, under oath, "Yes" to questions 1 (affirming under oath that you identify as African American) and 2(b) (affirming under oath that you sought work at MVP during the Vee Pak Class Period) on the Claim Form. You must complete and sign the Claim Form without alteration or amendment and return it to the Claims Administrator on or before [Claims Deadline]. *If you do not timely complete and return a signed and <u>fully</u> completed Claim Form, you will not receive a monetary settlement award.*

### Am I able to be part of both the *GSB* Class and the *Vee Pak* MVP Subclass?

Yes, if you truthfully answer "Yes" to Claim Form Question 1 and both questions 2(a) and 2(b) under oath and timely submit a signed, fully completed Claim Form, you will be a member of both the *GSB* Class and the *Vee Pak* MVP Subclass and eligible to receive the benefit from settlements in both matters.

As an example of how you should respond to the Claim Form Questions:
- If you sought work from this MVP office between January 1, 2011 and February 26, 2011, but not after that, and did not reject assignments to Vee Pak, you would answer "No" to question 2(a) but "Yes" to question 2(b).
- If you sought work from this MVP office between October 22, 2013 and December 31, 2014, but not before that, and did not reject assignments to GSB, you would answer "Yes" to question 2(a) but "No" to question 2(b).
- If you sought work from this MVP office between February 27, 2011 and October 22, 2013, and did not reject assignments to Vee Pak or GSB, you would answer "Yes" to both questions 2(a) and 2(b).

If you are uncertain how to respond to the questions, please contact the claims administrator or class counsel at:

***Claims Administrator***
Settlement Services, Inc.
Telephone:
Email:
Address:

**Am I required to participate in the Settlements?**

No, you may do nothing, and you will remain a member of the *GSB* Class and the *Vee Pak* MVP Subclass and bound by the settlements in both Matters, but you will not receive a settlement check under the *GSB* Settlement and will not be eligible to later receive a proportionate share of the partial *Vee Pak* Settlement with MVP as described above.

You also have the right to object or exclude yourself from either of both Settlements if you comply with the opt-out procedure stated below. However, if you exclude yourself from either or both Settlements, you will not be eligible to receive any money from the Settlement(s) from which you exclude yourself.

**What is the Fairness Hearing and do I need to attend?**

The purpose of the Fairness Hearing in each case is to determine whether the proposed settlements of the lawsuits (full settlement in the *GSB* Matter and partial settlement with MVP only in the *Vee Pak* Matter) are fair, reasonable, and adequate, and whether the proposed settlements should be finally approved by the Court in each case. There will be a separate Fairness Hearing for the *GSB* Settlement before Judge Ellis and for the partial *Vee Pak* Settlement with MVP before Judge Tharp. Information about each Fairness Hearing is provided below. **Any Class Member who is satisfied with the proposed settlement does not have to appear at the Fairness Hearing.**

**How can I opt-out of either or both Settlements?**

**If you do not wish to participate in the *GSB* Settlement or the partial *Vee Pak* Settlement with MVP, you may also exclude yourself from either or both settlements ("Opt-Out Request").** To exclude yourself from the *GSB* Settlement, you must submit the following written statement on your Opt-Out Request: "I request to be excluded from the settlement in *Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.*, Case No. 15-cv-01524" and return it to the Claims Administrator and postmarked on or before [Opt-Out Deadline]. To exclude yourself from the partial *Vee Pak* Settlement, you must submit the following written statement on your Opt-Out Request: "I request to be excluded from the settlement in *Eagle, et al. v. Vee Pak, Inc., et al.*, Case No. 12-cv-09672" and return it to the Claims Administrator and postmarked on or before [Opt-Out Deadline].

**Parties Opting Out of GSB Matter are Subject to Gold Standard Baking, LLC Bankruptcy Proceeding.** On June 22, 2022, Gold Standard Baking, LLC, successor in interest to Gold Standard Baking, Inc., and its debtor affiliates each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 in the United States Bankruptcy Court for the District of Delaware, pending under case number 22-10559 (JKS). Information regarding the bankruptcy proceedings may be obtained by (i) visiting the website of the Debtors' notice and claims agent, Agent Solutions ("Omni") at: https://omniagentsolutions.com/GoldStandard; (ii) calling Omni at: (866) 989-6144 (toll-free; US & Canada) or (8 18) 574-6886 (international); or (iii) inquiring by email at GoldStandardinguirics@omniagnt.com.

You may submit a single Opt-Out Request excluding yourself from both settlements. Your Opt-Out Request must include your full name, address and telephone number and must be personally signed by you and returned to the Claims Administrator and postmarked on or before [Opt-Out Deadline]. If you exclude yourself from the *GSB* Settlement, you will not receive a settlement award in the *GSB* Matter as described above and you will not be bound by the release against GSB or MVP in the *GSB* Matter and may pursue other legal remedies against GSB or MVP on your own apart from the *GSB* Settlement that may be available to you. If you exclude yourself from the partial *Vee Pak* Settlement with MVP, you will not be eligible to receive a settlement award in the *Vee Pak* Matter as described above and you will not be bound by the release against MVP in the *Vee Pak* Matter and may pursue other legal remedies against MVP on your own apart from the partial *Vee Pak* Settlement with MVP that may be available to you. Neither the Parties nor their attorneys in either matter make any representations to you regarding what, if any, legal remedies are available to you should you choose to opt-out. In addition, a decision to opt-out of the partial *Vee Pak* Settlement with MVP will not impact your rights against the Non-Settling Defendants in the *Vee Pak* Matter, which is not part of this settlement. *You should not opt-out if you wish to participate in the settlement.*

**How can I object to the Settlement?**

Any person who has not validly and timely opted-out of the settlements but who objects to either or both of the proposed settlement may appear in person or through counsel at the Fairness Hearing and be heard as to why the either or both of the settlements should not be approved as fair, reasonable, and adequate. Neither Plaintiffs nor the Settling Defendants will pay attorneys' fees to an objector's counsel for work related to an objection to this Settlement. If you choose to object to either or both settlements, your written objection must be received by the Claims Administrator on or before [Objection Deadline]. The objection should set forth, in clear and concise terms, which settlement or settlements you are objecting to and the legal and factual arguments supporting the objection. Your written objection must also include your full name, address and telephone number and be personally signed and dated by you. Class Members who do not make timely objections in this manner will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the settlement.

If you file an objection and wish it to be considered in the *GSB* Matter, you must also appear at hearing on ___ at _:___.m. at [insert location], at which time the judge presiding over the *GSB* Matter (The Hon. Sara L. Ellis) will consider whether to grant final approval of the *GSB* Settlement. **YOU ARE NOT REQUIRED TO ATTEND THIS HEARING UNLESS YOU PLAN TO OBJECT TO THE SETTLEMENT.**

If you file an objection and wish it to be considered in the *Vee Pak* Matter, you must also appear

at hearing on ___ at __:___.m. at [insert location], at which time the judge presiding over the *Vee Pak* Matter (The Hon. John J. Tharp, Jr.) will consider whether to grant final approval of the partial *Vee Pak* Settlement. **YOU ARE NOT REQUIRED TO ATTEND THIS HEARING UNLESS YOU PLAN TO OBJECT TO THE SETTLEMENT.**

**When are the Court hearings to determine if the Settlements are fair?**

The Fairness Hearing in the *GSB* Matter will be held before the Honorable Sara L. Ellis on ___ at __:___.m. at [insert location]. This Fairness Hearing may be adjourned from time to time as the Court may direct, without further notification. If you are a member of the *GSB* Class, you will be bound by the proposed *GSB* Settlement if it is approved, unless you opt-out by making a timely Request for Exclusion as described above.

The Fairness Hearing in the *Vee Pak* Matter will be held before the Honorable John J. Tharp, Jr. on ___ at __:___.m. at [insert location]. This Fairness Hearing may be adjourned from time to time as the Court may direct, without further notification. If you are a member of the *Vee Pak* Class, you will be bound by the proposed partial *Vee Pak* Settlement with MVP if it is approved, unless you opt-out by making a timely Request for Exclusion as described above.

**What rights am I giving up if I participate in the Settlements?**

Class Members who do not opt out of the *GSB* Settlement will release the GSB and MVP Releasees from the Released Claims in the *GSB* Matter, as discussed above. MVP Subclass Members in the *Vee Pak* Matter who do not exclude themselves from the partial *Vee Pak* Settlement will release the MVP Releasees from the *Vee Pak* Released Claims, as discussed above.

**How are the lawyers for the Settlement Class Paid?**

Multiple law firms have worked on these two lawsuits for more than ten years and have incurred well over $500,000 in case expenses, including hiring experts to help prove this case, and have expended more than $3,000,000 worth of attorney time. In the *GSB* Matter, the parties negotiated payment of attorneys' fees and costs separately from the amount available to pay claims of class members and have agreed that Class Counsel may petition the Court for reimbursement of some of the attorneys' fees and costs incurred over the last decade in this case in the amount of One Million, Three Hundred and Twenty-Five Thousand and 00/100 Dollars ($1,325,000.00). In the *Vee Pak* Matter, Plaintiffs' attorneys will not seek reimbursement of their attorneys' fees or costs incurred in the *Vee Pak* Matter at this time and the entire settlement amount will be held in trust.

**What if the courts do not approve either or both settlements?**

If the Court in the *GSB* Matter or the Court in the *Vee Pak* Matter do not approve either or both of the settlements, the case(s) where the settlement is not approved will proceed as if no settlement had been attempted, and there can be no assurance that Class Members will recover more than is provided for in the settlement agreement, or indeed, anything. As explained above, even if the partial *Vee Pak* Settlement with MVP is approved, the *Vee Pak* Matter will proceed against the Non-Settling Defendants, Vee Pak and Staffing Network.

**Can I review a copy of the Settlement Agreement or other papers that were filed with the Court?**

Yes, for a detailed statement of the matters involved in the *GSB* and *Vee Pak* Matters and the proposed Settlements, you may review the pleadings and other papers filed in the Lawsuit, which are available online through the court's PACER (Public Access to Court Electronic Records) system or may be inspected at the Office of the Clerk of the United States District Court, 219 S. Dearborn St., Chicago, Illinois, 60604, during regular business hours of each court day. Additional information about the Settlements is available at the settlement website, www.MVP_Settlement.com. You may also contact Class Counsel to review copies of the settlement papers filed with the Court.

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT OR THE JUDGE WITH INQUIRIES ABOUT THIS SETTLEMENT. DIRECT QUESTIONS ABOUT THE SETTLEMENT TO CLASS COUNSEL.**

| The Lawyers Representing the Class |
| --- |

The following law firms were appointed by the *Vee Pak* Court to represent the *MVP* Subclass (called "Class Counsel"):

| | | |
| --- | --- | --- |
| Cohen Milstein Sellers & Toll PLLC 1100 New York Avenue, N.W. Suite 500 Washington, D.C. 20005 | National Legal Advocacy Network 1 N LaSalle St., Suite 1275 Chicago, Illinois 60602 | Hughes Socol Piers Resnick & Dym Ltd. 70 W. Madison St., Suite 4000 Chicago, Illinois 60602 |

The following law firms were appointed by the *GSB* Court to represent the *GSB* Class:

| | |
| --- | --- |
| Cohen Milstein Sellers & Toll PLLC 1100 New York Avenue, N.W. Suite 500 Washington, D.C. 20005 | Hughes Socol Piers Resnick & Dym Ltd. 70 W. Madison St., Suite 4000 Chicago, Illinois 60602 |

Dated: _____

BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION IN THE MATTER OF *ZOLLICOFFER, ET AL. V. GOLD STANDARD BAKING, INC., ET AL., CASE NO.* 13-CV-01524

Dated: _____

BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION IN THE MATTER OF *EAGLE, ET AL. V. VEE PAK,*

*INC., ET AL.*, CASE NO. 12-CV-09672

Dated: _____

**EXHIBIT D**
***PROPOSED ORDER GRANTING PRELIMINARY APPROVAL***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES ZOLLICOFFER and NORMAN GREEN, on behalf of themselves and similarly situated laborers, | |
| Plaintiffs, | Case No.  13-cv-1524 |
| v. | Honorable Sara L. Ellis |
| GOLD STANDARD BAKING, INC., PERSONNEL STAFFING GROUP, LLC d/b/a MOST VALUABLE PERSONNEL d/b/a MVP | Magistrate Judge Kim |
| Defendants. | |

**PRELIMINARY APPROVAL ORDER**

James Zollicoffer and Norman Green ("Named Plaintiffs" or "Class Representatives") and Gold Standard Baking, Inc. and Personnel Staffing Group, LLC d/b/a MVP a/k/a PSG OLDCO, LLC ("PSG") (collectively, the "Settling Defendants"), (collectively, the "Settling Parties"), having reached two partial settlements in this matter on a class-wide basis, the Court having reviewed the Partial Class Action Settlement Agreements, the record in this Litigation, and Plaintiffs' Unopposed Motion for Preliminary Approval of the Parties' Partial Class Action Settlement Agreements and for Approval of the Form and Manner of Class Notice and Scheduling of a Hearing for Final Approval of Settlement,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The Court hereby preliminarily approves the Partial Class Action Settlement Agreements ("Settlement Agreements") as being fair, reasonable and adequate. The Settlement Agreements are the result of arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular.

2.    The Court has jurisdiction over the subject matter of this lawsuit and the Parties, including the members of the Class, as defined below.

3.      In an Order issued on July 13, 2020 [795], the Court certified a class in this matter defined as:

> African American laborers who sought work assignments through MVP to work at GSB, but on one or more occasion were not assigned to work at GSB when a position was available during the period of two years prior to the filing of Plaintiffs' original complaint for the § 1981 claims, or February 27, 2011, up through and including December 31, 2014.

4.      The claims being certified for purposes of this settlement are limited to the Released Claims against Gold Standard Baking, Inc. and PSG and their Releasees as those terms are defined in the Settling Parties' Partial Class Action Settlement Agreements, which are attached hereto as Attachments 1 and 2, and are incorporated into this Order of Preliminary Approval.

5.      The Court appoints Plaintiffs James Zollicoffer and Norman Green as Class Representative and attorneys Joseph Sellers and Harini Srinivasan of Cohen, Milstein, Sellers & Toll, PLLC and Christopher Wilmes and Caryn Lederer of Hughes, Socol, Piers, Resnick & Dym, Ltd. as Class Counsel. The Court finds that the Class Representatives and Class Counsel have provided adequate representation to the Class.

6.      The Court appoints Settlement Services, Inc. as the Claims Administrator. The Claims Administrator shall comply with all of the duties and requirements set forth in the Settlement Agreements and applicable federal, state, and local law.

7.      The Court approves, as to form and content, the proposed Claim Form and Notice of Class Action Settlement attached to the Settlement Agreements as Exhibits A, B, C, and E, respectively. The Court finds that the procedures for notifying the Class about the Settlement as described in the Settlement Agreements provide the best notice practicable under the circumstances and therefore meet the requirements of due process.

8.      A Fairness Hearing for purposes of determining whether the Settlement Agreements should be finally approved, shall be held before this Court on _____ at __:__ _.m. at [insert location]and may be continued from time to time without further notice.

9.     The Court reserves exclusive and continuing jurisdiction over this Litigation, the Class Representatives, the Class and the Settling Defendants for the purposes of:  (1) supervising the implementation, enforcement, construction, and interpretation of this Order and the Settlement Agreement upon the entry of a Final Order by this Court granting final approval of the Settlement Agreement and dismissing the Settling Defendant from this Litigation with prejudice, or in the event of an appeal of such Final Order, the final resolution of the appeal upholding the Final Order; (2) hearing and determining any application by Class Counsel for an award of attorneys' fees and costs; (3) supervising the distribution of the Settlement Fund; and (4) resolving any disputes or issues that may arise in connection with this Litigation or the Settlement of this Litigation.

IT IS SO ORDERED.


_____
Sara L. Ellis
United States District Judge
Northern District of Illinois


Dated this ___ day of _____, 2022

## EXHIBIT E
### *Information for Published Notice of Class Action Settlement*

---

### *Attention African Americans Who Sought Work at a Staffing Agency known as MVP between January 1, 2011 and December 31, 2014*

If you are African American and sought a work assignment at a staffing agency called MVP located at 5637 W Roosevelt Rd, Cicero, IL 60804 but on one or more occasions did not receive a work assignment to Gold Standard Baking and/or Vee Pak by MVP between January 1, 2011 and December 31, 2014, then you may be eligible to participate in class action settlements against some of the defendants in the matters of

*Zollicoffer, et al. v. Gold Standard Baking, Inc., et al.*, Case No. 13-cv-01524 and
*Eagle, et al. v. Vee Pak, Inc., et al.*, Case No. 12-cv-09672.

For more information on the settlements and whether you are eligible to participate in the settlement, call 1-xxx-xxx-xxxx, visit the Settlement Website at www.MVP_Settlement.com or send inquiries by mail to:

[insert class counsel information]

---